IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL THOMAS, *et al*,

        *Plaintiffs*,

    v.

TEKSYSTEMS, INC.,

        *Defendant*.

Civil Action No. 2:21-cv-460

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Michael Thomas ("Thomas"), Maria Conyers-Jordan ("Conyers-Jordan"), Austin Sherman ("Sherman"), Lynda Alexandra Maher ("Maher"), Ava Doré ("Doré"), Rachel Richenberg ("Richenberg"), and Emily Burke ("Burke") (collectively "Plaintiffs"), on behalf of themselves and all other persons similarly situated, filed this action against Defendant TEKsystems, Inc. ("TEK"). (ECF No. 52). Plaintiffs' claims against TEK arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., for TEK's alleged failure to pay Plaintiffs and other similarly situated employees overtime wages. (*Id.* ¶ 1). Additionally, (1) Thomas and Conyers-Jordan bring a claim against TEK under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq*. for TEK's failure to pay them and other similarly situated employees overtime wages; (2) Doré brings claims against TEK under Washington state law for TEK's failure to pay her and other similarly situated employees overtime wages, meal and rest breaks, and related penalties; (3) Richenberg brings claims against TEK under New York state law for TEK's failure to pay her and other similarly situated employees overtime wages, as well as for failure to provide her and similarly situated employees with statutorily required wage notices and

1

wage statements, and related penalties; and (4) Burke brings a claim against TEK under Massachusetts state law for TEK's failure to pay her and other similarly situated employees overtime wages. (*Id.* ¶¶ 142-47).

After the close of discovery, Plaintiffs filed a motion seeking final FLSA collective action certification (ECF No. 141) and a supporting brief (ECF No. 142). Plaintiffs also filed a motion to certify four state law classes under Federal Rule of Civil Procedure 23(b)(3) ("Rule 23") (ECF No. 144) and a supporting brief (ECF No. 145). For the following reasons, the Court will grant Plaintiffs' motions to certify their FLSA collective action and to certify their four proposed state law class actions in accordance with Rules 23(a) and (b)(3).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

TEK describes itself as "a global business and technology firm" that assists its clients in achieving their "business goals" through "staff augmentation" ("placing workers with specific skills on assignment at customer companies for a certain period of time"). (ECF No. 158, p. 12). This involves assembling teams of employees for customers who need a larger or more specialized workforce for a project. (*Id.*). TEK has two client bases – customers (companies that TEK works with to help them build staffing) and candidates or consultants who TEK works with to place with its customers. (ECF No. 60-6, pp. 23-24). At the core of all of TEK's services are its recruiters ("Recruiters"). Recruiters identify potential candidates who meet the requirements for an open position with one of TEK's customers. (ECF No. 142, pp. 9-10); (ECF No. 155, pp. 11-12). Recruiters locate candidates to be placed with TEK customers. (ECF No. 143-68, p. 4). Recruiters screen candidates to gain insights into their skills, goals, interests, and provide aligned career opportunities. *Id.* When Recruiters begin with TEK, they are classified as Recruiter Trainees. (ECF No. 156-14, p. 13). Employees remain in the position of Recruiter Trainee until they have

completed all the required training and demonstrate their ability to perform the duties of a Recruiter. (*Id.*). Recruiter Trainees are paid overtime wages if they work over 40 hours per week. (*Id.*). On the other hand, TEK classifies Recruiters as exempt from state and federal overtime wage requirements. (ECF No. 55, p. 4). Thus, TEK does not pay Recruiters overtime wages when they work over 40 hours in a workweek. (*Id.*).

TEK also employs account managers ("AMs"). AMs primarily work directly with TEK's customers to understand and outline the customer's hiring needs. (ECF No. 155, p. 15); (ECF No. 142, p. 12); (ECF No. 143-3, p. 36). In contrast, Recruiters are primarily responsible for locating candidates who meet the requirements for an open position. (ECF No. 157-13, p. 4). Recruiters present their proposed candidates to their AMs. (ECF No. 143-3, p. 20). AMs ultimately decide which candidates to present to TEK's customers. (*Id.* ("From a [R]ecruiter perspective, we consistently remain in communication with the consultant while our [AMs] remain in consistent communication with the customers.")). The parties dispute the role of Recruiters and TEK's expectations of Recruiters. Plaintiffs contend that Recruiters work in a "producing role." (ECF No. 142, p. 10.). They assert that "Recruiters' primary duty is to screen and match IT job candidates for open roles with TEK's [customers] and to submit candidates who match with the open roles to TEK's AMs." (*Id.* at 11). TEK counters that it reasonably expects Recruiters to do more than "rote screening and matching." (ECF No. 155, p. 11). Instead, it expects Recruiters to:

- Recruit top IT talent and match their career goals with our clients' hiring needs[;]

- Develop recruiting strategies to identify qualified candidates by using specialized networking tools[;]

- Evaluate the strengths and weaknesses of candidates through our screening process[;]

- Negotiate unique compensation packages (wages, benefits, etc.) to attract and close candidates[;]

- Communicate details of new assignments and manage contract employees while on assignment[;]

- Partner with TEKsystems sales team to identify top accounts and target skill sets[; and]

- Maintain relationships with Technical Professionals to gain industry knowledge and obtain referrals[.]

(ECF No. 143-68, p. 4). TEK uses the same job description for all Recruiters. (*Id.*). It is undisputed that AMs decide whether to approve Recruiters' chosen candidates and that AMs focus primarily on working with TEK's customers to define their hiring needs (as opposed to focusing on candidates and consultants as Recruiters do). (ECF No. 155, p. 15); (ECF No. 142, p. 12). The parties dispute whether Recruiters are more akin to personnel clerks, merely screening candidates to determine whether they meet the minimum qualifications and fitness for employment with TEK's customers, as Plaintiffs contend, (ECF No. 142, p. 41), or whether Recruiters' work is more involved and requires independent judgment and initiative, as TEK contends (ECF No. 155, p. 13).

The parties also dispute whether Recruiters are entry-level employees. According to Plaintiffs, Recruiters are entry-level employees. (ECF No. 142, p. 9). Plaintiffs assert that Recruiters are generally hired early in their career and have an annual attrition rate of approximately 38 to 47%. (*Id.*). The average tenure of named Plaintiffs and Plaintiffs who have opted-in to the FLSA collective action, according to Plaintiffs, is 1.28 years as a Recruiter. (*Id.*). TEK does not require Recruiters to have any previous information technology ("IT") knowledge or experience. (*Id.* at 9-10). TEK argues that the Recruiter position is not an entry-level role because it does not hire employees into the Recruiter role directly, employees are hired as Recruiter Trainees. (ECF No. 155, p. 10). TEK argues that many people are never promoted to Recruiter.

(*Id.*).  Further, it highlights that for those who do obtain promotion, the length of time needed to complete the training and demonstrate their abilities is highly variable, ranging from 13 weeks to more than 1 year for some Plaintiffs.  (*Id.*).  Finally, it argues that (1) many Recruiters remain in the role for years, (2) employees have been Recruiters, moved to roles with different responsibilities and then returned to the Recruiter role, and (3) many Recruiters possess substantial experience in recruiting or another relevant industry prior to working at TEK.  (*Id.*)

TEK subjects all Recruiters to the same production quotas.  (ECF No. 143-4, pp. 21-22).  The quota for Recruiters is 25 points a week based on the following activity points: G2s (intakes); reference checks; submittals (which is when an AM submits a candidate to a customer that the Recruiter solicits); interviews (which is when TEK's customers interview the candidate); and starts (which is when a candidate ultimately starts a job with a TEK client).  (*Id.* at 29).  Prior to July 2022, TEK required Recruiters to maintain a weekly average of 30 "interactions," such as reference checks, G2s, and meals with candidates.  (*Id.* at 28).  TEK requires all Recruiters to meet the same spread levels which is the difference between the amount a customer pays TEK for placing the consultant and the costs to TEK to place them.  (*Id.* at 14); (ECF No. 143-6, p. 15).

TEK provides uniform training to Recruiters.  The Recruiter Trainees undergo a 13-week training period designed by TEK's corporate training department.  (ECF No. 143-4, p. 8).  TEK provides uniform guides to all its Recruiters including, but not limited to: Recruiter Onboarding Plan and the Participant Guide, which contain sample scripts for conversations with candidates; Recruiter Onboarding Plan; Reference Check Guidance; Red Zone Script; Search Strings for LinkedIn Recruiters; "Sourcing Strategy: Plan of Attack;" "Consultant Conversation Guide;" and "Application Recruiting Smart Questions." (*See, e.g.*, ECF Nos. 143-78, 143-57, 143-79, 143-82).

TEK's policies explain that Recruiters are expected to work 45-60 hours per week. (ECF No. 143-23, p. 15 ("The habits you develop early in your career play a pivotal role in determining success. Working long days and weekends are often a necessary part of meeting business goals.")). Recruiters also respond to AM and potential candidate emails, texts, and calls in the evenings and on the weekends. (ECF No. 143-12, p. 10); (ECF No. 143-46, p. 5); (ECF No. 91, pp. 29-30). Recruiters often work through lunch either taking consultants and/or job candidates out to lunch or soliciting potential candidates. (ECF No. 143-33, p. 19); (ECF No. 143-91, p. 4).

At Count I of the amended complaint, Plaintiffs, on behalf of themselves and the FLSA collective, bring a claim under the FLSA alleging that TEK does not pay Recruiters overtime wages when they work over 40 hours in individual workweeks even though Plaintiffs and members of the collective are not exempt from the overtime provisions of the FLSA. (ECF No. 52, ¶¶ 92-101). The primary merits dispute regarding Count I is whether Plaintiffs and other members of the collective are exempt from the FLSA overtime requirements pursuant to the administrative exemption.

At Count II, Thomas and Conyers-Jordan, on behalf of themselves and those similarly situated within Pennsylvania, allege that TEK violated PMWA, 43 P.S. §§ 333.101, *et seq.*, by failing to pay Recruiters in Pennsylvania overtime wages when they worked in excess of 40 hours per workweek. (*Id.* ¶¶ 102-108).

At Count III, Doré, on behalf of herself and others similarly situated in Washington, alleges that TEK violated the Washington Minimum Wage Act ("WMWA") by failing to pay Recruiters overtime wages for their overtime hours worked. (*Id.* ¶¶ 109-113). At Count IV, Doré, on behalf of herself and others similarly situated in Washington, alleges that TEK violated the Washington Meal and Rest Period Provisions by failing to provide Doré and other Recruiters in Washington

with meal and rest periods (or failing to properly compensate Recruiters for their missed meals and rest periods). (*Id.* ¶¶ 114-24). At Count V, Doré, on behalf of herself and others similarly situated in Washington, alleges that TEK is liable under the Washington Wage and Rebate Act for willfully and unlawfully refusing to pay Recruiters in Washington the wages they are owed. (*Id.* ¶¶ 125-27).

At Count VI, Richenberg, on behalf of herself and those similarly situated in New York, alleges that TEK violated the New York Labor Law ("NYLL") by willfully and intentionally failing to pay Recruiters in New York overtime wages. (*Id.* ¶¶ 128-33). At Count VII, Richenberg, on behalf of herself and those similarly situated in New York, alleges that TEK violated the NYLL by willfully failing to supply Recruiters in New York with wage notices at the time of their hire; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. (*Id.* ¶¶ 134-37). At Count VIII, Richenberg, on behalf of herself and those similarly situated in New York, alleges that TEK violated the NYLL by failing to provide Recruiters in New York with accurate statements of wages as required by the NYLL. (*Id.* ¶¶ 138-41).

At Count IX, Burke, on behalf of herself and those similarly situated in Massachusetts, alleges that TEK violated the Massachusetts Overtime Law by failing to pay Recruiters in Massachusetts the overtime to which they were entitled. (*Id.* ¶¶ 142-47).

Plaintiffs request that the Court grant their motion for final FLSA collective action certification. (ECF No. 141). They also request that the Court certify the following state law classes for all issues under Rule 23(b)(3):

**Pennsylvania Overtime Class** – Plaintiffs Michael Thomas and Maria Conyers-Jordan request the Court certify a class of "All current and former Recruiters employed by Defendant in Pennsylvania from April 9, 2018 to the final date of judgment."

**Washington Overtime and Meal and Rest Break Class** – Plaintiff Ava Doré requests the Court certify a class of "All current and former Recruiters employed by Defendant in Washington from January 19, 2019 to the final date of judgment."

**New York Overtime and Accurate Paystub Class** – Plaintiff Rachel Richenberg requests the Court certify a class off "All current and former Recruiters employed by Defendant in New York from January 19, 2016 to the final date of judgment."

**Massachusetts Overtime Class** – Plaintiff Emily Burke requests the Court certify a class of "All current and former Recruiters employed by Defendant in Massachusetts from January 19, 2019 to the final date of judgment."

(ECF No. 144, p. 1).

## III.    ANALYSIS

### A.  FLSA Collective Action Certification

The FLSA "was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *overruled on other grounds by Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013). "Under the 'collective action' mechanism set forth in . . . § 216(b), an employee alleging an FLSA violation may bring an action on 'behalf of h[er]self . . . and other employees similarly situated,' subject to the requirement that 'no employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party . . . .'" *Id.*

Courts follow a two-tiered analysis in determining whether a case may move forward as a collective action. *Id.* A plaintiff's burden at the first step is light and can be met by producing "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.*

at 195. "Generally, plaintiffs meet the standard by producing some evidence indicating common facts among parties' claims and/or a common policy affecting all the collective members." *Meals v. Keane Frac GP LLC*, No. 16-1674, 2017 WL 2445199, at *3 (W.D. Pa. Jun. 6, 2017). If the plaintiff can satisfy her initial burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). On August 9, 2021, the Court conditionally certified the following collective: "All individuals employed by Defendant as Recruiters at any time within three years prior to the filing date of this action through the date of the final disposition and who were paid on a salary basis and classified as exempt from overtime." (ECF No. 25, p. 1). Thus, the Court now focuses on the second step of the FLSA collective action process.

The second step of the process is more demanding. Specifically, at the second stage, "with the benefit of discovery," the district court "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Camesi*, 729 F.3d at 243. In determining whether individuals are similarly situated at the second stage of the litigation, the United States Court of Appeals for the Third Circuit has adopted an ad-hoc approach requiring consideration of all the relevant factors and a factual determination on a case-by-case basis. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

> Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Id.* This list is not exhaustive, and the Court may consider any other relevant factors. *Id.*; *see also Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. CIV.A. 10-948, 2011 WL 6372852, at *3

(W.D. Pa. Dec. 20, 2011) ("[D]etermining whether class members are similarly situated at the decertification stage generally requires consideration of three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations."). Importantly, "[b]eing similarly situated does not mean simply sharing a common status . . . . Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538. "To be found similarly situated, members of the collective need not have an identical experience; complete symmetry of job functions is not required for final certification under the FLSA." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2021 WL 3021978, at *6 (W.D. Pa. July 16, 2021). "[P]laintiffs must demonstrate by a preponderance of the evidence that members of a proposed collective action are similarly situated in order to obtain final certification and proceed with the case as a collective action." *Id.* For the following reasons, the Court will grant Plaintiffs' motion for FLSA collective action certification.

1. Employment in the Same Department, Division, or Location

Plaintiffs argue that this factor weighs in favor of certification because Recruiters are "unified" under "one structure" as part of TEK's "talent delivery" team. (ECF No. 142, p. 34). Plaintiffs argue that all members of the proposed collective "share the same job title, primary job duties, have the same training, are evaluated by the same production metrics, and work in the same department." (*Id.*). They argue that it is immaterial that Plaintiffs and members of the collective work in different geographic locations because they all work for the same department and "TEK exercises systematic uniform control over them." (*Id.*). "In short, TEK treated all Recruiters the same." (*Id.*). TEK counters that Plaintiffs "are [not] employed in the same corporate department, division, and location . . . [as] [t]hey work at 113 different locations, in Washington DC and 38

different states, spread throughout the country." (ECF No. 155, p. 40). TEK contends that these locations vary significantly. (*Id.*). It highlights that some Plaintiffs work in delivery centers and some work in offices. (*Id.*). Further, TEK argues, the management structure at the locations differ and has changed over time. (*Id.*).

The Court holds that the similarity of Plaintiffs' work, duties, training, and structure across TEK locations weighs in favor of certification. TEK uses the same job description for all Recruiters. (ECF No. 143-68, p. 4). It subjects all Recruiters to the same production quotas. (ECF No. 143-4, pp. 21-22). It provides uniform training to Recruiters, (*see, e.g.*, ECF Nos. 143-78, 143-57, 143-79, 143-82), expects all Recruiters to work more than 40 hours per week, (ECF No. 143-23, p. 15), and does not pay any Recruiter overtime wages, (ECF No. 55, p. 4). These similarities are sufficient to support a finding that Recruiters work in the same corporate department or division – despite TEK's contentions. Plaintiffs working in various locations do not create a difference so disparate as to defeat certification.[1] Any variation between how different locations operated is not relevant for this analysis. As courts have routinely held, Plaintiffs do not need to work in identical conditions or structures to be similarly situated for purposes of an FLSA collective action. *See Ruffin v. Avis Budget Car Rental, LLC*, No. CIV.A. 11-1069 SDW, 2014 WL 294675, *3 (D.N.J. Jan. 27, 2014). Minor factual deviations do not defeat collective treatment.

---

[1] *Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299, at *4 (E.D. Pa. May 7, 2019) (holding that although FLSA collective action members worked in different locations, they were "nonetheless tied to the same 'corporate department' or 'division'"); *Garcia v. Freedom Mortg. Corp.*, 790 F. Supp. 2d 283, 284 (D.N.J. 2011) (holding that FLSA collective action members who worked in more than 100 locations throughout the United States were similarly situated); *McDonnell v. KRG Kings LLC*, No. 2:20-CV-01060-CCW, 2022 WL 3681672, at *3 (W.D. Pa. Aug. 25, 2022) (holding that FLSA collective action members who worked at twenty restaurant locations were similarly situated); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (holding that employees were similarly situated when they held the same job title, worked under the same job description, and worked within a uniform supervision hierarchy – even when employees worked in different stores under different supervisors).

2. Advancement of Similar Claims and Form of Relief

Plaintiffs contend that members of the collective advance similar claims and seek the same type of monetary relief for their FLSA claims: overtime wages for all hours worked over 40 hours per workweek and liquated damages in an equal amount. (ECF No. 142, p. 35). This is true from the face of the complaint. (ECF No. 52). TEK does not dispute that Plaintiffs advance the same claims and seek uniform relief. Instead, TEK counters that for 109 collective action members, their claims are "uniquely distinct" because the dates of their employment require them to show that TEK willfully misclassified them as exempt from overtime requirements in order to obtain a three-year limitations period (as opposed to a two-year period). (ECF No. 155, p. 41).[2] Because Plaintiffs and members of the collective bring identical claims and seek uniform relief, the Court holds that this factor weighs in favor of certification.

Under 29 U.S.C. § 255(a), actions alleging a violation of the FLSA must be commenced within two years "except that a cause of action arising out of a willful violation" which may be commenced "within three years after the cause of action accrued." 29 U.S.C. § 255(a). Willfulness is established when a plaintiff shows that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The fact that some members of the collective must prove willfulness in order to comply with § 255(a) does not preclude collective action certification.

---

[2] TEK argues that 132 collective action members are barred from recovery because they: (1) never were classified as FLSA-exempt; (2) never held the role of Recruiter; or (3) never held the role of Recruiter within the possible recovery period. (ECF No. 155, p. 41). This argument does not justify denying Plaintiffs' certification motion. As Plaintiffs highlight, these individuals do not fall within the definition of the FLSA collective and do not have claims in this litigation. (*See* ECF No. 164, p. 24). Thus, these collective members will be removed from the litigation. The Court holds that the parties should meet and confer to (1) reach an agreement regarding which members do not belong in the collective and (2) discuss a procedure for removing members who do not fall within the FLSA collective definition from this litigation.

*Wintjen v. Denny's Inc.*, No. 2:19-CV-00069-CCW, 2023 WL 4510520, at *3 (W.D. Pa. July 13, 2023) (holding, in the context of a conditional FLSA collective action certification, that the requirement of some of the plaintiffs to show willfulness, while others are not subject to the same requirement, does not preclude a finding that members of the collective are similarly situated with the named plaintiffs). TEK will not be prejudiced if the collective attempts to prove willfulness for the benefit of only some of the members. *See Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d 453, 460 (N.D.N.Y. 2014) ("It would be inefficient to deny the collective adjudication of these claims merely because the statute of limitations must be applied to each plaintiff individually when determining damages.").

3. <u>Circumstances of Employment and Salary</u>

Plaintiffs contend that all members of the collective share the following similarities: (1) a similar compensation structure as dictated by TEK's corporate office; (2) a standardized payroll system and policies that govern salary; (3) mandatory training policies; (4) uniform job duties and expectations; and (5) identical production quotas. (ECF No. 142, pp. 35-36). TEK counters that the following differences exist between Recruiters: (1) Recruiters do not identify and source candidates uniformly; (2) Recruiters vary in how and the extent to which they screen and validate candidates' credentials; (3) how Recruiters recommend the best candidate varies; (4) how Recruiters negotiate with candidates concerning wages and other terms of employments varies; (5) Recruiters do not communicate with and manage contractors in a uniform manner; (6) Recruiters' duration of tenure varies; (7) Recruiters operate with varying levels of supervision; and (8) the degree to which Recruiters work directly with TEK's customers and help shape their hiring needs to support TEK's and its customers' general business operations varies significantly. (ECF No. 155, pp. 36-39). The Court holds that Recruiters have identical primary job duties and are subject

to one common employment practice (being classified as exempt from overtime requirements under the FLSA).  Thus, despite variations in Plaintiffs' and members of the collective's work approach and quality, this factor weighs in favor of certification.  The similarities among the collective are sufficient to establish that they were "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538.

TEK's arguments are undermined by the fact that TEK itself treats Recruiters uniformly. TEK uses the same job description for Recruiters, tasks Recruiters with the same responsibilities, requires Recruiters to have uniform qualifications, and offers Recruiters compensation and benefits on the same scale.  (ECF No. 143-68, p. 4).  Recruiters are subject to and evaluated based on uniform production quotas.  (ECF No. 143-4, pp. 21-22).  TEK provides uniform training to Recruiters.  (ECF No. 143-4, p. 8); (ECF Nos. 143-78, 143-57, 143-79, 143-82).  In light of TEK's uniform treatment of Recruiters, the variations identified by TEK pale in comparison to the commonalities shared by all members of the collective.  On the most relevant aspects of their employment, Plaintiffs have demonstrated that they are similarly or near-identically situated: they perform the same primary job duties, are subject to uniform expectations, and TEK classifies all Plaintiffs and members of the collective as exempt from the overtime requirements of the FLSA. The central factual and legal questions driving this litigation are all shared by the collective and include: (1) whether Recruiters' work is directly related to management policies or the general business operations of TEK or TEK's customers; and (2) whether Recruiters exercise discretion and independent judgment.  While Plaintiffs and members of the collective may not have had an "identical experience," "complete symmetry of job functions is not required for final certification under the FLSA." *See Rood*, 2021 WL 3021978, at *6; *see also McDonnell*, 2022 WL 3681672, at *4 (holding that differences in the plaintiffs' employment did not prevent FLSA collective action

certification when there was "substantial overlap" in all members of the collective's work); *Carr*, 2019 WL 2027299.

It is irrelevant that Plaintiffs may have earned a different salary or worked various amounts of overtime hours because the form of relief sought by all members of the collective is identical. *Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522, at *5 (E.D. Pa. Nov. 29, 2016) ("While plaintiffs may have individualized amounts of damages for their minimum wage and overtime claims, the form of relief sought by each opt-in plaintiff is the same. Thus, this factor also weighs in favor of finding that the opt-in plaintiffs are similarly situated.").

4.  The Existence of Individualized Defenses

Plaintiffs assert that a single uniform defense applies to the entire collective – "that *every* Recruiter is administratively exempt from the FLSA overtime requirements." (ECF No. 142, p. 36) (emphasis in original). According to Plaintiffs, "[e]ach part of the defense can and will be decided based on generally applicable facts that govern all employees." (*Id.*). On the other hand, TEK contends that it classifies its Recruiters as exempt from overtime requirements pursuant to the FLSA's administrative and/or the highly compensated employee exemptions. (ECF No. 155, p. 30). It contends that "determining whether an employee is exempt involves a fact intensive inquiry." (*Id.* at 31). The Court holds that TEK's exemption defenses can be litigated on a collective basis.

Under the FLSA, employees who work more than 40 hours per week are entitled to overtime pay unless they fall within one of the FLSA's exemptions. 29 U.S.C. §§ 207, 213. The FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly i.e., against the employer. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). Under the administrative employee exemption, anyone employed in a bona fide administrative capacity is

exempt from the FLSA's overtime requirements.  29 U.S.C. § 213(a)(1).  An administrative employee is defined as someone:

(1)  Compensated on a salary or fee basis at a rate of not less than [$455 per week];

(2)  Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)  Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200; 29 C.F.R. 541.66; *see also Smith v. Johnson & Johnson*, 593 F.3d 280, 285 (3d Cir. 2010).  The parties primarily dispute the second and third prongs of the exception.

An employee qualifies for the highly compensated exemption if: (1) the employee's "primary duty includes performing office or non-manual work"; (2) the employee receives total annual compensation of at least $100,000; and (3) the employee "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601.  To satisfy the third prong, the employee need only perform one or more exempt duties more than occasionally. 29 C.F.R. § 541.701 (noting that the duty's "frequency . . . may be less than constant").  An exempt duty is more than occasional if it is performed normally and recurrently every workweek, but not if it is an isolated or one-time task.  *See id.*  Additionally, this exempt duty need not be the employee's "primary duty." *See* 29 C.F.R. § 541.601(a)(2); *Smith v. Ochsner Health Sys.*, 353 F. Supp. 3d 483, 498 (E.D. La. 2018). Because "[a] high level of compensation is a strong indicator of an employee's exempt status," the highly compensated employee exemption "eliminate[s] the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c); *see Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:08-cv-0536-LSC, 2012 WL 1566140, at *6 (N.D. Ala. Apr. 30, 2012) ("[T]he need to examine job duties is considerably relaxed for the highly compensated exemption . . . .").

Courts frequently deem it appropriate to allow representative evidence in FLSA collective actions even when the employer raises exemption defenses.[3]  Applying exemptions is "an inherently fact-based inquiry" that depends on many details of the particular job duties and actual work performed by the employee seeking overtime wages.  *Morgan*, 551 F.3d at 1263. Nevertheless, the evidence shows that Plaintiffs and members of the collective share many similarities regarding their particular job duties and day-to-day work.  "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Id.*

> If the mere existence of possible exemptions could defeat conditional certification, no FLSA action that is premised upon an alleged misclassification under [an] . . . exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 161 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

Given the volume of evidence showing Recruiters were similarly situated, TEK's defenses are not so individually tailored to each Plaintiff as to make this collective action unwarranted or unmanageable.  In addition, Plaintiffs' evidence establishes that TEK uniformly exempted all Recruiters from the FLSA's overtime wage requirements.  TEK's decision does not appear to have

---

[3] *See Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) ("[Q]uestions involved in resolving exemption will be answerable through evidence generally applicable to the class."); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("There is nothing inherently unfair about collectively litigating an affirmative executive-exemption defense where the district court has made well-supported and detailed findings with respect to similarity."); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 697–701 (3d Cir. 1994) (relying on the representative testimony of twenty-two (22) employees in finding that seventy (70) employees were misclassified as exempt professionals ); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224–25 (1st Cir. 1982) (finding that 246 employees were not exempt executive employees based on the testimony of only some employees); *Cruz v. Dollar Tree Stores, Inc.*, 270 F.R.D. 499, 508 (N.D. Cal. 2010) ("Whether employees who spent a majority of their time performing the seventeen tasks on the weekly payroll certifications were engaged in exempt [managerial] work is also a question that can be answered on a class-wide basis.").

been based on any individualized factors. TEK's uniform classification of Recruiters as exempt undermines any argument that its defenses cannot be litigated through representative evidence. *See, e.g., Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160(JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) (rejecting the defendants' argument that the need for individualized inquiries precluded conditional certification because the "[d]efendants did not consider the differences in [the employees'] job duties sufficient to require [the defendant] to undertake an individual analysis before categorically classifying all [employees] as exempt from FLSA"). "There is nothing unfair about litigating a single corporate decision in a single collective action," *Morgan*, 551 F.3d at 1264, especially where Recruiters performed similar tasks and were subject to a uniform policy. The fact that the highly compensated employee exemption may only apply to a small subset of members of the collective does not warrant decertification – especially when there is substantial overlap between the requirements of the administrative and highly compensated employee exemptions. *See Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018).

The Court holds that TEK's asserted exemption defenses can be litigated on a collective basis. This factor weighs in favor of certification. *See also Gomez v. Epic Landscape Prods.*, L.C., No. 22-CV-2198-JAR, 2024 WL 4605146, at *4 (D. Kan. Oct. 29, 2024) (holding that the administrative exemption can be litigated through representative proof); *Hendricks v. Total Quality Logistics, LLC*, No. 1:10CV649, 2023 WL 6217073, at *13 (S.D. Ohio Sept. 25, 2023) (same); *Pruess v. Presbyterian Health Plan, Inc.*, No. 1:19-CV-00629-DHU-JFR, 2024 WL 3844965, at *22 (D.N.M. Aug. 16, 2024) ("Just because the [administrative exemption defense] inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." (internal citations omitted)).

5. Fairness and Procedural Considerations

Plaintiffs contend that fairness and procedural considerations favor certification because "[d]ecertifying this case would potentially result in more than 500 individual trials," which would be inefficient and would place members of the collective "back at square one without the benefit of pooled resources" to resolve the common questions in this litigation. (ECF No. 142, p. 42). Plaintiffs emphasize that discovery has been expansive in this case, involving the exchange of over 600,000 documents. (*Id.*). TEK counters that fairness and procedural considerations disfavor certification since neither Plaintiffs' claims nor TEK's defenses are susceptible to representative proof and there is a need for individualized credibility determinations in light of conflict between some Plaintiffs' resumes and deposition testimony. (ECF No. 155, p. 45). In essence, TEK largely reiterates its argument that Plaintiffs are not similarly situated. The Court holds that fairness and procedural considerations weigh in favor of final certification, including considerations of judicial economy.

Of consideration to the Court is "whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve common issues of law and fact, and coherently manage the class in a manner that will not prejudice any party." *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 326 (E.D.N.Y. 2014); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity."). Fairness and procedural considerations counsel in favor of the Court certifying Plaintiffs' collective action to allow for a mass resolution of Plaintiffs' claims such that hundreds of individual lawsuits asserting almost identical FLSA claims are

unnecessary for Plaintiffs to obtain relief. As stated above, the Court holds that Plaintiffs and members of the collective are similarly situated. TEK's exemption defenses can be litigated on a collective basis. Thus, a trial based on representative evidence will be coherent and will not confuse the jury or unduly prejudice any party. "Congress' purpose in authorizing § 216(b) [collective] actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Symczyk*, 656 F.3d at 200. Given that Plaintiffs have allegedly been harmed by TEK's uniform classification of Recruiters as exempt from the overtime requirements of the FLSA, certifying this litigation as a collective action in accordance with § 216(b) is fair as it honors Congress's intent in authorizing FLSA collective actions. The Court holds that any required individual credibility determinations do not overcome the evidence showing that Plaintiffs and members of the collective are similarly situated. Final certification of the collective action pursuant to § 216(b) is warranted.

### B. Class Action Certification under Rule 23

The Court holds that Plaintiffs have satisfied, by a preponderance of the evidence, all the requirements of Rules 23(a) and (b). The Court will certify Plaintiffs' four proposed class actions.

1. Rule 23(a)

A class may be certified when the moving party satisfies the four requirements of Rule 23(a), and depending on the avenue, the requirements of either Rule 23(b)(1), (b)(2), or (b)(3). *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019) (internal citations omitted). To satisfy the requirements of Rule 23(a), the moving party must show the following:

(1) the class must be so numerous that joinder of all members is impracticable (numerosity);

(2) there must be questions of law or fact common to the class (commonality);

   (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and

   (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).

*Id.* at 182–83 (internal citations omitted). If the moving party satisfies these requirements, they must then satisfy any of the provisions of Rule 23(b). "A class certification decision requires a thorough examination of the factual and legal allegations." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal citations omitted). Rule 23 is no mere pleading standard, and certification "calls for findings by the court, not merely a 'threshold showing' by a party, that each of the requirements of Rule 23 [are] met." *Ferreras*, 946 F.3d at 183 (internal citations omitted). "A rigorous analysis requires that factual determinations be made by a preponderance of the evidence[,]" and the Court "must resolve every dispute that is relevant to class certification." *Id.* (citation omitted). Thus, while the Court has "broad discretion to control proceedings and frame issues for consideration under Rule 23, a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* (citation omitted) (cleaned up).[4]

   *i.  Numerosity*

   Plaintiffs must show that their proposed class is "so numerous that joinder of all members is impracticable." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018) (quoting FED. R. CIV. P. 23(a)(1)). "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "Like other factual determinations underlying Rule 23 determinations, it is 'a plaintiff's burden to demonstrate numerosity by a preponderance of the

---

[4] "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis*, 569 U.S. at 74. Courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Rule 23. *Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521, 524 (E.D.N.Y. 2010).

evidence.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013)). "[A]lthough '[n]o minimum number of plaintiffs is required to maintain suit as a class action,' a plaintiff . . . can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds forty.'" *Id.* at 486 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). "Mere speculation as to the number of class members—even if such speculation is a 'bet worth making'—cannot support a finding of numerosity." *Id.* (quoting *Hayes*, 725 F.3d at 357). The Third Circuit has outlined the following non-exhaustive list of factors to consider when determining if joinder is impracticable: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 253 (3d Cir. 2016). While all factors are relevant, "judicial economy and the ability to litigate as joined parties are of primary importance." *Id.* at 254.

Plaintiffs assert that there are over 336 Pennsylvania class members, 194 Washington class members, 294 New York class members, and 137 Massachusetts class members. (ECF No. 158, p. 36). TEK contends, despite the number of class members, that Plaintiffs have not met the numerosity requirement. (ECF No. 163, p. 27). TEK argues that joinder is practicable. (*Id.*). It asserts that Plaintiffs' FLSA collective action demonstrates that joinder is possible; thus, Plaintiffs have not proven numerosity. The Court holds that Plaintiffs have proven numerosity sufficient to satisfy Rule 23(a).

a.  Judicial Economy

Judicial economy looks to the administrative burden that multiple or aggregate claims place upon the courts. *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 594 (2012) (stating that the

numerosity requirement "also promotes judicial economy by sparing the courts the burden of having to decide numerous, sufficiently similar individual actions seriatim"); *id.* ("Courts no longer have to conduct a single, administratively burdensome action with all interested parties compelled to join and be present."). This factor takes into account any efficiency considerations regarding the joinder of all interested parties that the Court deems relevant, including the number of parties and the nature of the action. *Id.* In analyzing judicial economy, the Court must focus on whether the class action mechanism is substantially more efficient than joinder of all parties. *In re Modafinil Antitrust Litig.*, 837 F.3d at 254.

The Court holds that judicial economy is best served by litigating this case through class actions. Of Plaintiffs' four proposed classes, the smallest class has 137 members and the largest has 336. Litigating this case in the form of four class actions spares the Court the burden of having to decide hundreds of sufficiently similar individual actions. *See Marcus*, 687 F.3d at 594. TEK argues that the existence of the FLSA collective action proves that joinder is practicable. This argument fails. The existence of an FLSA collective action does not undermine the certification of a Rule 23 class action. Courts in the Third Circuit routinely certify FLSA collectives and class actions in the same litigation. *See, e.g., Talarico v. Pub. Partnerships, LLC,* No. CV 17-2165, 2022 WL 1524109 (E.D. Pa. May 12, 2022); *Carr*, 2019 WL 2027299; *Rood*, 2021 WL 3021978. Joinder may be possible in this case, but, given the number of members, it is not practicable.

b.   Ability and Motivation to be Joined as Plaintiffs

The second purpose behind the numerosity requirement is to further the class action goal of providing those with small claims reasonable access to a judicial forum for the resolution of those claims. *In re Modafinil Antitrust Litig.*, 837 F.3d at 257. Thus, the ability and motivation of Plaintiffs to pursue their litigation via joinder is the second primary factor the Court must focus

on in considering numerosity. *Id.*; *see Marcus*, 687 F.3d at 594 (stating that the numerosity requirement "creates greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually"). "This primarily involves an examination of the stakes at issue for the individual claims and the complexity of the litigation, which will typically correlate with the costs of pursuing these claims." *Id.*

There is no indication that class members are motivated to pursue their claims through joinder. While there is no evidence that TEK retaliated against any Recruiter in this litigation, courts generally recognize that "employees may be loath to identify themselves as opt-in or named plaintiffs in wage actions for fear of retaliation from the employer." *Zelinsky v. Staples, Inc.*, No. CIV. A. 08-684, 2008 WL 4425814, at *3 (W.D. Pa. Sept. 29, 2008). Further, TEK acknowledges that Recruiters make as little as $35,568 per year. (ECF No. 163, p. 29). Thus, many class members may not have the financial resources needed to join the litigation as individual plaintiffs.[5]

   *ii.  Commonality*

Plaintiffs must show that there are questions of law or fact common to their proposed class. FED. R. CIV. P. 23(a)(2). "Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims 'depend upon a common contention,' the resolution of which 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Niaspan Antitrust Litigation*, 397 F. Supp. 3d 668, 679 (E.D. Pa. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . is not the raising

---

[5] Further, Plaintiffs are dispersed across four states. "Although the advances in remote hearings, conferences, and depositions, has blunted the effect of geographic dispersion on the impracticability of joinder, it still may cause logistical problems, such as when [TEK] needs to depose . . . joined plaintiffs." *Muse v. Holloway Credit Sols., LLC*, 337 F.R.D. 80, 87 (E.D. Pa. 2020). Geographic dispersion favors a finding of numerosity.

of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Ferreras*, 946 F.3d at 185.

Plaintiffs argue that they have proven the commonality requirement because TEK uniformly classified Recruiters as exempt from the FLSA's overtime requirements. (ECF No. 145, p. 37). Given that Recruiters' job duties are well-defined, there are common questions of law or fact – despite any arguments about individualized differences in job function or methods. (*Id.*). TEK contends that Plaintiffs have not offered a single common question of law or fact. (ECF No. 158, p. 31). It argues that TEK's uniform classification of Recruiters as exempt does not generate a common answer to whether Recruiters are properly classified as exempt. (*Id.*). The Court holds that Plaintiffs have proven the commonality requirement in accordance with Rule 23(a).

A court in the Northern District of California considered a similar issue in *Avery v. TEKsystems, Inc.*, No. 3:22-CV-02733-JSC, 2024 WL 590364 (N.D. Cal. Feb. 13, 2024). In *Avery*, Recruiters sought to certify a class action under Rule 23 against TEK for allegedly violating California overtime, wage, and hour laws by classifying Recruiters as exempt from state law overtime requirements. *Avery*, 2024 WL 590364, at *1. Like in the instant case, TEK's main defense was that Recruiters were exempt from the overtime requirements because they fell under the administrative exemption. *Id.* at *3. The court held that the plaintiffs proved the commonality requirement of Rule 23(a):

> [B]oth parties agree TEK classifies all purported class members as exempt. So, the central dispute is whether purported class members were properly characterized as exempt. Resolving that dispute involves at least the common question of whether all Recruiters' work is "directly related to management policies or general business operations" of TEK or TEK's customers. . . . This question can be answered on a class-wide basis.

*Id.* at *5.

In the instant case, like in *Avery*, TEK uniformly classifies Recruiters as exempt from Pennsylvania, Washington, New York, and Massachusetts overtime requirements. (ECF No. 55, p. 4). Thus, the common question in each class, as acknowledged by TEK, (ECF No. 158, p. 31), is whether TEK properly classifies Recruiters as exempt.[6] TEK's central defense is that Recruiters are exempt pursuant to each state's administrative exemption. Thus, there are two main questions

---

[6] Plaintiffs' state law overtime wage claims are similar to their FLSA claims.

**Pennsylvania:** Like the FLSA, the PMWA requires employers to pay employees an overtime rate "not less than one and one-half times the employee's regular rate" for hours worked in excess of forty in a workweek, 43 Pa. C.S. § 333.104(c), and exempts from this overtime requirement employees employed "[i]n a bona fide executive, administrative or professional capacity," 43 Pa. C.S. § 333.105(a)(5). "Although the criteria for [the administrative exemption] under the PMWA are not identical to FLSA's criteria, the . . . tests are sufficiently similar that [a] court's analysis regarding the FLSA exemptions also applies to the PMWA exemptions." *Vanstory-Frazier v. CHHS Hosp. Co., LLC*, No. CIV.A. 08-3910, 2010 WL 22770, at *9 (E.D. Pa. Jan. 4, 2010).

**Washington:** The WMWA "mirrors the FLSA's overtime and exemption provisions." *Bollinger v. Residential Cap., LLC*, 863 F. Supp. 2d 1041, 1044 (W.D. Wash. 2012); *see also* Wash. Rev. Code § 49.46.010(3)(c); Wash. Rev. Code § 49.46.130; *Palazzolo-Robinson v. Sharis Mgmt. Corp.*, 68 F. Supp. 2d 1186, 1189 n.3 (W.D. Wash. 1999).

**New York:** "The NYLL provides wage and overtime protections for employees similar to the protections afforded to employees by the FLSA." *Sethi v. Narod*, 974 F. Supp. 2d 162, 183 (E.D.N.Y. 2013*); Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL . . . mandates overtime pay and applies the same exemptions as the FLSA.") *abrogated on other grounds by Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219 (2d Cir. 2018).

**Massachusetts:** Massachusetts overtime requirements are "essentially identical to the FLSA." *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999*); see also Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d 289, 294 (Mass. 2000).

Likewise, the California overtime wage requirements and exemptions are not meaningfully different from the requirements of the FLSA. While California's administrative exemption does not expressly incorporate the FLSA exemption, it is "essentially the same as the FLSA." *Deluca v. Farmers Ins. Exch.*, 386 F. Supp. 3d 1235, 1251 n.17 (N.D. Cal. 2019). There are minor differences between the statutes. California's administrative exemption contains additional elements not found within the FLSA. Moreover, California's administrative exemption requires that an employee be "primarily engaged" in administrative tasks rather than having those tasks as his or her "primary duty," but otherwise it mirrors the federal exemption. *See* Cal. Code Regs. Title 8, § 11070.

of fact and law at issue in each class: (1) whether Recruiters' primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (2) whether Recruiters' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200; 29 C.F.R. 541.66; *see also Smith*, 593 F.3d at 285.

In light of TEK's uniform treatment of Recruiters, these common questions can be answered on a class wide basis. TEK uses the same job description for Recruiters, tasks Recruiters with the same responsibilities, requires Recruiters to have uniform qualifications, and offers Recruiters compensation and benefits on the same scale. (ECF No. 143-68, p. 4). Recruiters are subject to and evaluated based on uniform production quotas. (ECF No. 143-4, pp. 21-22). TEK provides an identical training program to Recruiters. (ECF No. 143-4, p. 8); (ECF Nos. 143-78, 143-57, 143-79, 143-82). There may be minor variations in how Recruiters perform their tasks. Nevertheless, these differences are immaterial in light of the common questions posed by named Plaintiffs and class members. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) ("A finding of commonality does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification. . . . The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." (internal citations omitted)). Recruiters perform the same primary job duties, are subject to uniform expectations, and TEK classifies all Plaintiffs and members of the collective as exempt from the overtime requirements of the FLSA and state law. Plaintiffs have satisfied the commonality requirement of Rule 23(a).

  *iii. Typicality*

Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Satisfaction of this standard is a "low threshold." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)) (internal quotation marks omitted). "To conduct the typicality inquiry, the court must examine 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Niaspan*, 397 F. Supp. 3d at 680 (quoting *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211, at *26 (E.D. Pa. Oct. 19, 2015)).

Plaintiffs assert that they have met the typicality requirement because named Plaintiffs' claims arise out of TEK's uniform conduct towards Plaintiffs and class members – TEK's classification of Recruiters as exempt from state law overtime wage requirements. (ECF No. 145, p. 38). The Court holds that Plaintiffs met the typicality requirements of Rule 23(a).

The Court holds that Plaintiffs proved that their claims are typical of class members' claims. Plaintiffs worked as Recruiters and are seeking to represent classes of Recruiters. (*See* ECF No. 143-54 (Thomas's declaration)); (ECF No. 143-34 (Conyers-Jordan's declaration)); (ECF No. 143-94 (Sherman's declaration)); (ECF No. 143-91 (Maher's declaration)); (ECF No. 143-46 (Doré's declaration)); (ECF No. 143-48 (Richenberg's declaration)); (ECF No. 143-33 (Burke's declaration)); (ECF No. 144, p. 1 (defining the four state law classes)). TEK does not contest that Plaintiffs proved this requirement. (*See* ECF No. 158). TEK classified all Recruiters

as exempt from state law overtime wage requirements. (ECF No. 55, p. 4). Plaintiffs allege that they were misclassified as exempt and are therefore entitled to overtime pay, penalties for meal and rest break violations (Washington class), and penalties for inaccurate wage notices and statements (New York class). (ECF No. 52). Plaintiffs have satisfied the typicality requirement because they have the same alleged injuries as class members resulting from TEK's classification of Recruiters.

      *iv. Adequacy*

Under Rule 23(a), Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy inquiry under Rule 23 "has two components designed to ensure that [class members] interests are fully pursued." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996). First, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) (internal citations omitted). Second, it seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (internal citations omitted).

Plaintiffs assert that they have proved the adequacy requirements of Rule 23(a) because (1) there is no conflict between named Plaintiffs and members of the class, (2) named Plaintiffs are pursuing the same claims as the class and are subject to the same defenses, and (3) they have actively participated in the discovery process. (ECF No. 145, p. 39). Plaintiffs contend that their attorneys meet the adequacy requirements in this case as their law firms "have done a tremendous amount of work on this case, have experience in complex litigation, have knowledge of the applicable law, and will devote all necessary resources to the prosecution of this case." (*Id.*). TEK

does not contest adequacy. (ECF No. 158). The Court holds that Plaintiffs have established adequacy as required by Rule 23(a).

There is no evidence of any conflicts of interests between named Plaintiffs and class members. (ECF No. 146, ¶ 22). Plaintiffs' counsel provided evidence indicating that they have experience litigating class actions and have sufficient resources to zealously represent named Plaintiffs and class members. (*Id.* ¶¶ 14-21). Plaintiffs have actively participated in an extensive discovery process. (*Id.* ¶¶ 20, 24). Plaintiffs have established that they will adequately represent the interest of the class members.

   2. Rule 23(b)(3)

In addition to the threshold requirements of Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(3), the provision at issue in this case, provides for so-called "opt-out" class actions lawsuits. *See In re Warfarin*, 391 F.3d at 527 (internal citations omitted). Under Rule 23(b)(3), two additional requirements must be met in order for a class to be certified: (1) common questions must "predominate over any questions affecting only individual members" (the predominance requirement), and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy" (the superiority requirement). *Id.*; *see also* FED. R. CIV. P. 23(b).

       i.  *Predominance*[7]

---

[7] Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other. *See Baby Neal ex. rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Rule 23(b)(3)'s predominance element in turn requires that common issues predominate over issues affecting only individual class members. *See* FED. R. CIV. P. 23(b)(3). "Rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement." *In re Warfarin*, 391 F.3d at 528 (internal citations omitted). The Court incorporates its commonality analysis by reference.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Third Circuit has stated:

> To assess predominance, a court at the certification stage must examine each element of a legal claim "through the prism" of Rule 23(b)(3). A plaintiff must "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."

*Marcus*, 687 F.3d at 600 (internal citations omitted).

Plaintiffs assert that they have met the predominance requirement because the "applicability of the administrative exemption and TEK's failure to pay Recruiters overtime pay when they work more than 40 hours per week . . . can be resolved through common proof applicable to all class members' claims" (ECF No. 145, p. 40). TEK contends that Plaintiffs have not shown predominance because (1) "there is no common evidence that the primary duty of Recruiters is merely to 'screen' and 'match' candidates to requirements determined by TEK's customers," (2) there are no standardized templates or other tools TEK requires Recruiters to use, (3) Recruiters are not subject to standardized supervision and hierarchy, (4) Recruiters are not subject to uniform "production" standards, and (5) common evidence cannot answer whether Recruiters' primary job duty relates to management policies or general business operations of TEK or its customers, or whether Recruiters customarily and regularly exercise discretion and independent judgment in executing their primary duties. (ECF No. 155, pp. 34-40). TEK further contends that (1) whether Recruiters meet TEK's reasonable expectations raises individualized issues; (2) some class members are subject to agreements that require them to pursue any claims in arbitration on an individual basis; (3) some class members are subject to the individualized

31

defense that state law does not have extraterritorial effect as to their claims; and (4) some class members in Massachusetts and New York are subject to the defense that they satisfy the highly compensated employee exemption. (*Id.* at 40-44). The Court holds that Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).

**Pennsylvania Class**

Count II (Overtime Wage Requirements)

At Count II, Plaintiffs allege TEK violated 43 P.S. § 333.104 by failing to pay Thomas, Conyers-Jordan, and class members overtime wages for hours worked in excess of 40 hours per week. (ECF No. 52, ¶¶ 102-08). Under § 331.104, "[e]mployes shall be paid for overtime not less than one and one-half times the employee's regular rate" for all hours worked in excess of 40 hours in an individual workweek. 43 P.S. § 333.104. Based on the pleadings filed in the instant litigation, the Court anticipates that TEK will argue at trial that it did not pay Plaintiffs and class members overtime wages because it classified them as exempt pursuant to the PMWA's administrative exemption.

Under the PMWA's administrative employee exemption, anyone employed in a "bona fide . . . administrative . . . capacity" is exempt from the PMWA's overtime protections. 43 P.S. § 333.105(a)(5). The exemption applies to employees whose (1) salaried compensation is at least "$250 per week, exclusive of board, lodging or other facilities," 34 Pa. Code § 231.83(5); (2) "primary duty consists of the performance of office or nonmanual work directly related to management policies or general operation of his employer or the customers of the employer," 34 Pa. Code § 231.83(1), and (3) primary duty "requir[es] the exercise of discretion and independent judgment," 34 Pa. Code § 231.83(5). The parties primarily dispute the second and third element. "In general, the exercise of discretion and independent judgment involves the comparison and the

evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a) (explaining "discretion and independent judgment" for the purposes of the FLSA whose administrative exemption mirrors PMWA's exemption).

TEK uniformly classifies all Recruiters as exempt from PMWA's overtime requirements. (ECF No. 55, p. 4). Thus, the issue with regard to Count II is whether the administrative exemption applies. For the purpose of this analysis, the question is whether the administrative exemption is capable of proof through common evidence. The Court acknowledges that while TEK's uniform exemption policy suggests "the employer believes some degree of homogeneity exists among the employees, the existence of a blanket exemption policy, standing alone, is not itself determinative of the main concern in the predominance inquiry: the balance between individual and common issues." *Myers*, 624 F.3d at 549 (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)).

Whether Recruiters' "primary duty consists of the performance of office or nonmanual work directly related to management policies or general operation of his employer or the customers of the employer" is subject to proof through collective evidence. TEK does not seem to dispute this proposition. (ECF No. 158, p. 38 ("[T]he first prong of the administrative exemption can be decided as a matter of law.")). As discussed above, Recruiters fulfill the same role for TEK: sourcing candidates to place with TEK's customers. TEK uses the same job description for Recruiters, tasks Recruiters with the same responsibilities, requires Recruiters to have uniform qualifications, and offers Recruiters compensation and benefits on the same scale. (ECF No. 143-68, p. 4). Recruiters are subject to and evaluated based on uniform production quotas. (ECF No. 143-4, pp. 21-22). TEK provides uniform training to Recruiters. (ECF No. 143-4, p. 8); (ECF

Nos. 143-78, 143-57, 143-79, 143-82).   Thus, based on TEK's own policies and materials, Recruiters share a primary duty across the class.

TEK argues that whether Recruiters' primary duty "requir[es] the exercise of discretion and independent judgment" must be resolved on an individual basis because Recruiters acted with different levels of discretion and judgment when performing their duties.  (ECF No. 158, p. 40). Moreover, TEK argues that there is a wide variation among Recruiters on how they accomplish tasks.  (*Id.*).  The Court finds that these potential differences are insufficient to overcome Plaintiffs' showing of predominance for certification purposes.  *See Wood v. Mike Bloomberg 2020, Inc.*, No. 1:20-CV-2489-LTS-GWG, 2024 WL 3952718, at *10 (S.D.N.Y. Aug. 27, 2024) ("[S]o long as there is evidence that proposed class members' primary job duties are 'largely similar' the predominance requirement is satisfied."); *Jackson*, 298 F.R.D. at 166 (finding that minor differences in duties cannot defeat predominance where all class members "have the same primary responsibility"); *Jacob*, 289 F.R.D. at 421-22 (holding that predominance was satisfied, notwithstanding some slight variations among class members, because of significant common evidence of similar duties); *Pruess*, 2024 WL 3844965, at *13 (stating, in applying an almost identical administrative exemption, that predominance is present even when employees' duties "certainly have some variation" when most of the employees performed similar duties).   In showing the commonalities between TEK Recruiters, Plaintiffs have demonstrated that common questions of law and fact will predominate with respect to the Pennsylvania Class.

**Washington Class**

Count III (Overtime Wage Requirements)

At Count III, Doré, on behalf of herself and members of the Washington class, alleges that TEK violated the WMWA by failing to pay Recruiters overtime wages for hours worked in excess of 40 hours per week. (ECF No. 52, ¶¶ 109-13). Washington law states that:

> no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed.

Wash. Rev. Code § 49.46.130. Administrative employees are exempt from Washington's overtime wage requirements. Employees can be defined as administrative if: (1) their "primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers," and (2) they "customarily and regularly exercise discretion and independent judgment." Wash. Admin. Code §§ 296-128-520(1), (3). Given that Washington's overtime requirements and administrative exemption are essentially identical to Pennsylvania's, the Court holds that Plaintiffs have proven predominance with regards to Count III for the reasons discussed in detail above in the Count I analysis.

Count IV (Meal and Rest Break Requirements)

At Count IV, Doré, on behalf of herself and members of the Washington class, alleges that TEK violated Washington's Meal and Rest Period Provisions by failing to provide Recruiters with the meal and rest breaks to which they are entitled, failing to ensure Recruiters took meal and rest breaks, and failing to provide Recruiters with pay to compensate for each missed break. (ECF No. 52, ¶¶ 114-24). Washington Administrative Code § 296-126-092 states that:

> (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.

(2) No employee shall be required to work more than five consecutive hours without a meal period.

(3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.

(4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.

(5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

Wash. Admin. Code § 296-126-092.

TEK concedes that, since April 9, 2018, it had a policy and practice to provide meal and rest breaks to Recruiter Trainees in Washington. (ECF No. 146-1, p. 1). The policy was not applicable to Recruiters. (*Id.*). TEK did not track whether Recruiters in Washington took meal and rest breaks. (*Id.*). Moreover, TEK did not provide additional compensation to Recruiters for missed meal and rest breaks. (*Id.* at 2).

The Court holds that common questions of fact and law predominate Count IV. The issue is whether TEK's policy of not providing Recruiters with meal and rest breaks (or compensation for missed meal and rest breaks) violates Washington's meal and rest break provisions. This question is common to all class members in the Washington class. *See Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 415 P.3d 224, 230 (Wash. 2018) (holding that employees satisfied Washington's Superior Court Civil Rule 23's predominance requirement, which is nearly identical its federal counterpart, despite minor differences among employees, when employees alleged that the employer failed to ensure employees could take meal and rest breaks).

Count V (Depriving Employees of Earned Wages)

At Count V, Doré, on behalf of herself and members of the Washington class, alleges that TEK violated the Washington Wage Rebate Act. (ECF No. 52, ¶¶ 125-27). Washington's Wage Rebate Act prohibits employers from "[w]ilfully and with intent to deprive the employee of any part of his or her wages" paying "any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." Wash. Rev. Code § 49.52.050. Washington law also provides that:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees.

Wash. Rev. Code § 49.52.070. Thus, similar to Count III, the issue at Count V is whether TEK unlawfully classified Recruiters as exempt from the WMWA's overtime requirements. For the reasons explained above, the Court holds that Plaintiffs satisfy Rule 23(b)(3)'s predominance requirement with respect to Count V.

**New York Class**

Count VI (Overtime Wage Requirements)

At Count VI, Richenberg, on behalf of herself and members of the New York class, alleges that TEK violated NYLL by failing to pay Richenberg and class members the overtime compensation to which they are entitled. New York law states that: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." N.Y. Comp. Codes R. & Regs. 12 § 142-3.2; *see also* N.Y. Lab. Law § 650 (McKinney). Administrative employees are exempt from New York's overtime wage requirements. *Id.* New York's administrative exemption mirrors the FLSA's exemption. *See Sethi*, 974 F. *Supp. at 162*; *Reiseck*, 591 F.3d at 105 ("NYLL . . . mandates overtime pay and applies the same exemptions as the

FLSA.").   Given that Washington's overtime requirements and administrative exemption are essentially identical to the FLSA's, and therefore Pennsylvania's, the Court holds that Plaintiffs have proven predominance with regards to Count VI for the reasons discussed in detail above in the Count I analysis.

<u>Counts VII & VIII (Failure to Provide Wage Notices and Accurate Pay Statements)</u>

At Counts VII and VIII, Richenberg, on behalf of herself and members of the New York class, alleges that TEK violated NYLL by willfully failing to supply Richenberg and New York class members with wage notices at the time of their hire,  (ECF No. 52, ¶¶ 134-37), and accurate statements of wages every pay period, (*id.* ¶¶ 138-41).   New York law requires employers to provide employees, at the time of hiring, a notice containing various information including "their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; [and] the regular pay day designated by the employer . . . ." N.Y. Lab. Law § 195; *see* N.Y. Lab. Law §§ 190, *et seq*.  Employers are also required to provide employees with an accurate statement every pay period containing "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." *Id.*

Plaintiffs allege that TEK failed to provide Recruiters with accurate wage notices at the time of hire and pay statements at each pay period. (ECF No. 52, ¶¶134-37).  The Court finds that whether TEK provided Recruiters in New York with an accurate wage notice at the time of hiring and accurate pay statements is subject to collective proof – the common question to all members of the class is whether TEK had a practice of providing employees with proper wage notice and pay statements.  Plaintiffs have proved predominance with respect to Counts VII and VIII.

**Massachusetts Class**

<u>Count IX (Overtime Wage Requirements)</u>

At Count IX, Burke, on behalf of herself and members of the Massachusetts class, alleges that TEK violated Massachusetts state law requirements by failing to pay Burke and class members the overtime compensation to which they are entitled.  (ECF No. 52, ¶¶ 142-47).  Massachusetts law states that "no employer . . . shall employ any of his employees . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed." Mass. Gen. Laws ch. 151, § 1A.  The overtime wage requirement does not apply to administrative employees.  *Id.*  The Massachusetts administrative exemption is identical to that of the FLSA.  *See Tam v. Fed. Mgmt. Co.*, 163 N.E.3d 395, 398 (Mass. App. Ct. 2021).  Given that Massachusetts's overtime requirements and administrative exemption are essentially identical to the FLSA's, and therefore Pennsylvania's, the Court holds that Plaintiffs have proven predominance with regards to Count IX for the reasons discussed in detail above in the Count I analysis.

**Arbitration Agreements**

TEK contends that common issues do not predominate in any class since there are 381 class members who are parties to an arbitration agreement and whose claims must be pursued in individual arbitration. (ECF No. 158, pp. 41-42). TEK does not specify which of the four proposed classes the 381 individuals belong within.  Plaintiffs counter that the arbitration agreements do not justify denying class certification because those class members may be handled through a subclass or by removing class members at a later date.  (ECF No. 163, p. 21).

Class certification is not necessarily precluded by the existence of an arbitration defense as to some putative class members.[8] Plaintiffs have presented strong evidence that common questions of law and fact will predominate in the litigation of the four proposed class actions. This strong predominance cannot be overcome by a potential arbitration agreement defense as to some members. The Court reserves the right to "create a subclass, modify the class definition, or otherwise specially treat the class members potentially subject to arbitration at a later juncture." *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 91 (M.D. Tenn. 2004).

**The Extraterritorial Effect of State Law**

TEK argues that remote work is common at TEK and "some individuals aligned to an office may not perform work in or otherwise have substantial ties to that state." (ECF No. 158, p. 42). TEK highlights that "[n]umerous class members reside in states other than the state of the office to which they are aligned: 65 of the New York putative class, 21 of the Massachusetts putative class, 61 of the Pennsylvania putative class; and 17 of the Washington putative class." (*Id.*). Thus, TEK may present a defense with respect to the extraterritorial effect of each state's laws. Plaintiffs counter that "[t]he class definitions for all four states restrict the class to employees who were employed 'by Defendant *in*' the respective states." (ECF No. 163, p. 21 (emphasis in original)). Thus, if an employee did not physically work in Pennsylvania, Washington, New York,

---

[8] *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) ("The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification."); *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (finding class certification to be proper despite the fact that some class members signed papers releasing the defendant from liability); *Finnan v. Rothschild & Co.*, 726 F.Supp. 460, 465 (S.D.N.Y. 1989) (finding that the fact that some class members had signed releases or arbitration agreements was subordinate to the larger common defense of the defendant and did not defeat the merits of class certification).

or Massachusetts, they are not part of the class. Given Plaintiffs' concession, the Court finds that there is no extraterritorial issue and thus no basis to deny certification based upon this argument. These collective members will be removed from the litigation. Assuming that the aforementioned individuals do not belong in the proposed classes, the Court orders the parties to meet and confer to (1) reach an agreement regarding which members do not belong in the collective and (2) discuss a procedure for removing members who do not fall within the FLSA collective definition from this litigation. Further, even if the extraterritorial effect of state law applies to some of the proposed class members, the Court holds that this defense, applicable to only a small portion of each class, is not sufficient to defeat certification.

**The Highly Compensated Employee Exemption**

TEK contends that it may assert the highly compensated employee exemption defense against certain class members in Massachusetts and New York. (ECF No. 158, pp. 43-44). TEK acknowledges that the parties have yet to engage in discovery concerning the wages earned by putative class members. (*Id.* at 44). Thus, TEK did not identify how many members of the New York and Massachusetts classes may be subject to this defense. The fact that the highly compensated employee exemption may only apply to a subset of members of the New York and Massachusetts classes does not warrant denial of class certification – especially when there is substantial overlap between the requirements of the administrative and highly compensated employee exemptions. *See Snively*, 314 F. Supp. at 734.

*ii. Superiority*

Rule 23(b)(3) requires Plaintiffs to demonstrate "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. PRO. 23(b)(3). In making this decision, Rule 23(b)(3) instructs courts to consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* This list of factors is non-exhaustive. *Amchem*, 521 U.S. at 616.

Plaintiffs contend that they have satisfied Rule 23(b)(3)'s superiority requirement because: (1) there is no indication that any class members want to individually control the litigation; (2) Plaintiffs challenge TEK's uniform exemption policy and all Recruiters share the same primary job duty; and (3) class litigation allows employees to pursue their claims without fear of retaliation. (ECF No. 145, p. 47). TEK contends that Plaintiffs' FLSA collective action demonstrates that class litigation is not a superior method of resolving this litigation. (ECF No. 158, pp. 45-46). TEK asserts that there is no evidence of retaliation and adjudicating Plaintiffs' claims on a class-wide basis would not be manageable because individualized inquiries are necessary to resolve this litigation. (*Id.* at 46-47). In essence, TEK reasserts its numerosity, commonality, and predominance arguments. The Court holds that Plaintiffs have shown that class litigation is superior to other available methods for resolving this litigation.

There is no indication that members of the proposed classes have a desire to litigate their claims individually. There is no pending litigation that counsels against the superiority of class litigation. The Court is a proper forum for this litigation as events giving rise to Plaintiffs' claims arose in this district and TEK conducts sufficient business within Pennsylvania to subject itself to personal jurisdiction within the state. *See* 28 U.S.C. § 1391(b). The Court declines to re-address

most of TEK's argument as it pertains to superiority because it has previously addressed these arguments in the numerosity, commonality, and predominance sections of this opinion.

Further, adjudicating Plaintiffs' claims on a class basis will be manageable. As discussed in detail in the commonality and predominance sections, every claim may be proven through representative evidence. TEK's defenses can be litigated through representative proof. Common questions of law and fact overwhelm any purported individualized defenses and inquiries, rendering class litigation appropriate. TEK argues that individual damages issues will predominate because "the existence, type, and extent of damages" varies between class members. (ECF No. 158, p. 47). This argument fails as "damage calculations alone cannot defeat certification." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he fact that damages are not identical across all class members should not preclude class certification."); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013) (" [A] class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.").

### C. Appointment of Class Counsel

Under Rule 23(g)(1), since the Court will certify the four proposed classes, the Court will appoint class counsel. FED. R. CIV. P. 23(g). In appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class[.]

*Id.* The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* Plaintiffs' counsel, Werman Salas P.C. and Lichten & Liss-Riordan, P.C., request appointment as class counsel. (ECF No. 145, p. 39). Both firms have experience in class litigation, have the resources to meet the economic burdens of class action litigation, have been involved in this litigation since its inception, and have participated actively in this litigation through the pre-trial process. (ECF No. 146, pp. 4-5); (ECF No. 147, pp. 1, 6, 9). The Court will appoint Plaintiffs' counsel as class counsel.

## IV.    CONCLUSION

For these reasons, the Court will grant Plaintiffs' Motion for Final FLSA Collective Action Certification (ECF No. 141) and Plaintiffs' Motion for Class Certification (ECF No. 144). The Court will appoint Plaintiffs' counsel as class counsel. Orders of Court will follow.[9]

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3/10/25
Dated

---

[9] TEK raised a multitude of arguments against Plaintiffs' FLSA collective action and why four proposed state law classes should not be certified in its various briefs. (ECF Nos. 155, 158, 167). The Court addressed the most relevant and focused arguments in this opinion. To the extent the Court did not address an argument raised in one of these documents, the Court did not find the argument to be dispositive in adjudicating Plaintiffs' certification motions.