**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| MICHAEL THOMAS, MARIA CONYERS-JORDAN, AUSTIN SHERMAN, LYNDA ALEXANDRA MAHER, AVA DORÉ, RACHEL RICHENBERG, and EMILY BURKE, on behalf of themselves and others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> TEKSYSTEMS, INC., <br><br> Defendant. | Civil Action No. 2:21-CV-00460-WSS |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant TEKsystems, Inc. ("TEK" or "the Company"), by and through its undersigned Counsel, submits this memorandum of law in support of its Motion for Partial Summary Judgment. As set forth below, the Court should apply the Fair Labor Standards Act's ("FLSA") default two-year statute of limitations period to Plaintiffs' collective action claims, and not the longer three-year period that applies only when Plaintiffs can carry their burden of proof that an alleged violation was willful.

## I.    INTRODUCTION

Plaintiffs Michael Thomas, Maria Conyers-Jordan, Austin Sherman, Lynda Alexandra Maher, Ava Dore, Rachel Richenberg, and Emily Burke ("Plaintiffs") have moved for partial summary judgment on behalf of an FLSA collective and four state law Rule 23 classes, asserting that TEK's Recruiters do not satisfy the administrative exemption. (ECF No. 187.) TEK vigorously

disputes Plaintiffs' assertion. The factual record demonstrates that Recruiters regularly work with TEK's customers to define the requirements of the roles that customers need to fill in order to maintain their business operations; use their discretion and judgment to source, screen, evaluate, negotiate with, and place candidates ("consultants") who provide the services that TEK's customers contract for; and take an active role in managing consultants' interactions with the customer; and do all of this with little supervision or oversight. TEK will present this evidence in its opposition to Plaintiffs' motion.

TEK files its motion for partial summary judgment in order to properly define the bounds of the FLSA collective. Under the FLSA, a default two-year statute of limitations applies for the recovery of alleged unpaid overtime wages. 29 U.S.C. § 255(a). A plaintiff may extend the presumptive limitations period from two to three years, but only upon a showing that the company *willfully* misclassified the role at issue. In other words a willful FLSA violation requires a showing of intentional or reckless disregard of the employee classification and overtime requirements. Plaintiffs simply cannot do so. The undisputed evidence reflects TEK changed its practices more than two decades ago in order to ensure that Recruiters satisfy the administrative exemption; that TEK has a consistent, thorough, and multi-layered compliance approach to ensure that the Recruiter role is appropriately classified; and that courts have agreed that staffing industry recruiters satisfy the administrative exemption, including recruiters performing comparable duties for companies related to TEK.

For these reasons, as set forth more fully below, TEK's Motion for Partial Summary Judgment should be granted, and the FLSA collective limited to the default two-year period.

## II.    STATEMENT OF UNCONTESTED MATERIAL FACTS

### A.    TEK's Business And The Recruiter Role

TEK is a global business and technology firm that assists its customers in achieving their business transformation, customer experience, and business goals. (SOF ¶2). At the core of TEK's business is IT talent services, which involves staff augmentation, i.e., finding, screening, placing, and managing workers with specific skills on assignment at TEK's customer companies for a certain period of time. (SOF ¶3.) TEK also offers capacity solutions, which involves assembling teams of workers for customers who need a larger or more specialized workforce for a project; and total management services, which involves outsourcing and managing an entire IT function or outcome for a customer. (*Id.*) TEK provides its customers the ability to achieve their technological goals through the talents and services of the IT professionals assigned by TEK. (SOF ¶5.)

At the core of TEK's business is the Recruiter. Garrett Haycock, TEK's Senior Vice President of Talent Delivery, describes the Company's expectations for Recruiters as follows:

> Their job [Recruiter ] is to understand the customer, the customer's need, the customer's project, the outcomes that the customer is looking to achieve.
>
> They need to understand the customer's environment, what type of culture do they have, and also understanding what are the skills necessary for them to be able to assist the customer in achieving the outcomes that they're looking for.
>
> They also have to understand the nuances and details associated with the contractual arrangements associated with that particular customer. And at times we have multiple agreements with one customer, so they have to understand which agreement are we working under and what are the terms and conditions of that agreement. And ultimately they have to know what are the details of what they can offer a consultant associated with the hourly bill rate that we might be billing a customer as well as any parameters or necessary background investigations or screening that would be necessary for that particular customer.
>
> And once they have all that information, they will then have to understand the skills, goals, and interests of the consultant to be able to make a very complex match between this person [who] has not only the skills, the technical skills, they have the level of experience associated with those skills.

3

At times maybe need to understand the industry, is this a banking and finance customer, and do they need to have banking and finance experience, and what does that mean. If they work for a bank, is that the same as working for an insurance company. Sometimes it doesn't matter; sometimes it does.

And so for them, they have to manage all of these complexities associated with the assignment and the skills to be able to make a match to be able to associate that consultant, not waste a customer's time sending over people that are not qualified for that requirement, and ensuring that that customer ultimately is satisfied.

Because they placed the person. Then they maintain the person; meaning, they are getting feedback from the customer, providing that feedback to the consultant -- So if they're working on the customer's site, the customer may tell them, Hey, you know, they're doing great technically. They're not getting along with their coworkers. They need to do a better job. Hey, Johnny was late three times in the past month. You need to talk to Johnny about their punctuality relative to the assignment.

And then ultimately the recruiter is responsible for continuing to work with that consultant, because many of our assignments are six months, nine months, 12 months, 18 months, whatever it is. But they are temporary in that nature, and in that case their responsibility is to help that person find another job once their current assignment comes to conclusion.

(SOF ¶4.)

### B.    Origins of TEK's Creation of Distinct Recruiter Trainee and Recruiter Roles

In 2002, TEK and several related companies settled litigation challenging its designation of recruiters as overtime exempt from their date of hire. (SOF ¶6 (the "*Johannes* matter".) TEK resolved the case without an admission of wrongdoing and also altered its practice. (*Id*.) Since that time, TEK does not hire directly into the exempt role of Recruiter. (SOF ¶7.) Instead, TEK hires individuals into the role of Recruiter Trainee, classifying them as non-exempt and paying them on an hourly basis with overtime. (SOF ¶8.) Recruiter Trainees must complete a 13-week training program, and then demonstrate the ability to perform at an exempt level. (SOF ¶¶7-8.) Only after the Recruiter Trainee has shown that ability may they be promoted to the role of Recruiter, a salaried, overtime exempt role. (SOF ¶9.)

Some of TEK's co-defendants and related companies that were part of the *Johannes* matter have faced legal challenges to their classification of Recruiters as exempt. In those instances, the defendants have prevailed, with courts holding that the plaintiff-recruiters were properly classified. (SOF ¶27.)

### C.    Responsibility For Ensuring Job Classifications Are Correct

Ensuring that jobs, including the job of Recruiter, are properly classified at TEK is a shared responsibility. Faith Johnson, TEK's Director of Human Resources, has a Master's degree in Human Resources, 27 years of professional experience in human resources, and 20 years at TEK. (SOF ¶¶10-14.) She is knowledgeable regarding the FLSA exemption standards based on her education, work experience, trainings she has attended, and following news topics in her field. (SOF ¶12.) Ms. Johnson also is knowledgeable about TEK Recruiter job duties based on her experience at the company and participation in meetings where TEK's expectations for the role are discussed. (SOF ¶¶13, 17.) Ms. Johnson has ultimate responsibility for ensuring that the Recruiter role is properly classified. (SOF ¶14.)

Ms. Johnson is supported by others in TEK's internal human resources group, a Compliance team from Allegis Group (of which TEK is a subsidiary), TEK's in-house legal team, and TEK's business leaders  (SOF ¶¶14, 19-25.) Ms. Johnson take part in scheduled weekly, monthly, and annual meetings with these various groups in order to identify potential risks and take steps for the company to stay in compliance with applicable laws. (SOF ¶¶20, 26.) When the facts warrant, Ms. Johnson and her team have reclassified roles from exempt to non-exempt. (SOF ¶21.) She has not learned facts that have lead her to believe the Recruiter role should be reclassified and in fact believes that the role has only become more complex and required more independence over time. (SOF ¶18.)

5

III.    **SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted where, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A genuine issue of material fact is one that "affect[s] the outcome of the suit under the governing law" and could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 (3d Cir. 1998); *Par. v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 624 (W.D. Pa. 2019), *cause dismissed sub nom. Par. v. Univ. Health Ctr. of Pi*, No. 19-2049, 2019 WL 5884996 (3d Cir. July 24, 2019).

The moving party is not required to provide evidence "negating the opponent's claim," but rather need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once the moving party has demonstrated the absence of genuine issues of material fact, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992); *see also Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) ("the non-moving party cannot rely upon unsupported assertions, conclusory allegations or mere suspicions in attempting to survive summary judgment"). Summary judgment is appropriate, "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Montanez v. Mo. Basin Well Servs.*, No. 4:14-cv-00553, 2017 U.S. Dist. LEXIS 138086, *18 (M.D. Pa Aug. 28, 2017). "The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations

6

contained in his or her pleadings." *Todoric v. UPMC St. Margaret*, No. 2:15CV1678, 2017 WL 4340900, at *7 (W.D. Pa. Sept. 29, 2017).

## IV.    ARGUMENT

### A.    Plaintiffs' FLSA Claims Are Limited To The Default Two-Year Limitations Period, As The Undisputed Materials Facts Show That TEK Did Not Willfully Misclassify Recruiters As Exempt.

As he United States Supreme Court has explained, "[o]rdinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the [plaintiff] must prove that the employer's conduct was willful[.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see* 29 U.S.C. § 255(a). "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin*, 486 U.S. at 132. A willful violation requires more than an employer merely knowing that the FLSA was "in the picture;" the violative act must have been "voluntary," "deliberate," and "intentional." *Id.* at 132-33. Accordingly, the standard of willfulness is met only if the plaintiff can show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. *See also Tyger v. Precision Drilling Corp.*, 832 Fed.App'x 108, *115 (3rd Cir. 2020) (affirming district court holding that employer did not willfully violate the FLSA where "Plaintiffs have failed to adduce any evidence that [defendant] 'either knew or suspected that their practices were violative of the FLSA or recklessly disregarded the possibility of same'"); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702 (3d Cir. 1994); *Gillott v. Powerex, Inc.*, 904 F. Supp. 442, 450 (W.D. Pa. 1995) (absent any evidence that the defendant-employer "intentionally violated the FLSA or that it was reckless in its consideration of whether its Rules violated the FLSA…[plaintiffs' claim] does not amount to a willful violation of the FLSA," requiring a two-year statute of limitations).

TEK's strong basis for classifying the Recruiter role as exempt, its following of precedent, and its robust compliance framework to ensure the classification remains appropriate bely any argument that it "either knew or showed reckless disregard for" whether its classification decision violated the FLSA. Accordingly, the presumptive two-year statute of limitations should apply.

**1.    TEK Has Reasonably Relied On Relevant Precedent That Recruiters Are Properly Classified As Exempt.**

Since 2002, when it resolved a challenge to its classification of employees under the FLSA, TEK has not hired directly into the role of Recruiter. (SOF ¶ 6-7.) Instead, those interested in TEK's recruiting function are hired into the role of Recruiter Trainee. (SOF ¶7). Recruiter Trainees are classified as non-exempt, receiving hourly wages and overtime pay while they learn about the company, receive training, and practice the skills necessary to be a Recruiter. (SOF ¶.8) Only after completing this program and demonstrating their ability to perform the work in an exempt fashion—which takes at least 13 weeks and sometimes far longer—is a Recruiter Trainee promoted to the salaried exempt role of Recruiter. (SOF ¶¶8-9.)

Other companies that were part of the same settlement as TEK also adopted the same practice of requiring successful demonstration of exempt skills before being promoted from Recruiter Trainee to Recruiter. (SOF ¶6.) Some of those companies subsequently have faced challenges to the classification of Recruiters as exempt and have prevailed. (SOF ¶27.)

For example, in *Andrade v. Aerotek, Inc.*, 700 F. Supp. 2d 738, 741 (D. Md. 2010), the court determined that a recruiter at Aerotek— an Allegis Group subsidiary like TEK and one of the co-defendants in the *Johannes* matter—had been appropriately classified as exempt under the FLSA. The plaintiff-recruiter's responsibilities included making phone calls with potential staffing candidates, completing phone and in-person screenings, conferring with management regarding candidates, vetting candidates' prior work experience and performance, and preparing candidates

for interviews. *Id.* at 741-743. The court reasoned that the recruiter's responsibilities related to the management and general business operations of both the staffing agency and its customers, and that the recruiter exercised sufficient discretion and independent judgment in her work to warrant exemption from overtime. *Id.* at 745-748.

Not long thereafter, in *Delodder v. Aerotek*, 471 Fed. Appx. 804, 807 (9th Cir. 2012), the appellate court upheld the lower court finding that a class of Aerotek recruiters were properly classified as administratively exempt. Yet another court reached the same conclusion regarding Aerotek recruiters. In *Drake v. Aerotek, Inc.*, No. 14-CV-216-BBC, 2016 WL 80672, at *7 (W.D. Wis. Jan. 7, 2016), the court held that a recruiter who primarily handled screening, evaluating, reference checking, and evaluation of employment terms for candidates to be placed on assignment was appropriately classified as exempt.

In *Hudkins v. Maxim Healthcare Servs.*, 39 F.Supp.2d 1349, 1349–50 (M.D. Fla. 1998)—again involving a company that had been a co-defendant of TEK in the Johannes matter—the court held that the plaintiff, who worked as a recruiter and whose job duties included job duties included: (1) recruiting nurses capable of providing nursing services to the defendant's clients; (2) placing nurses who would provide the best services to the defendant's clients; (3) approving higher rates of pay for nurses; (4) counseling and disciplining nurses; and (5) participating in the termination of nurses was properly classified as an exempt administrative employee.

In short, since 2002, TEK has had distinct Recruiter Trainee and Recruiter roles, where one may become an exempt Recruiter only after completing training and demonstrating the ability to perform the role in an exempt way. Other, related companies which employ exempt Recruiters performing similar duties have successfully defended the classification. In light of these facts, TEK's continued classification of its Recruiters as exempt is reasonable.

9

### 2. TEK's Robust FLSA Compliance Mechanisms Negate Any Claim of Willful Misclassification.

In addition to reasonably relying on multiple court decisions affirming the exempt status of recruiters performing similar duties to TEK Recruiters, the Company also has maintained a continuous, vigorous, and multi-pronged approach to ensure the role is properly classified.

TEK's expectations for the Recruiter roles are consistent with the requirements of the administrative exemption. (SOF ¶4.) Ms. Johnson, an experienced human resources professional with decades of knowledge about the Recruiter role, holds the belief that the role satisfies the exemption and has only grown more complex and required more independence over time. (SOF ¶18.) Ms. Johnson and others, including the rest of the HR team, a compliance team, a legal team, and business leaders, continuously monitor whether the applicable legal standards have changed, and also whether the duties of the Recruiter role have changed in a way that may impact the job's classification. (SOF ¶¶14-26.)

This conduct stands in sharp contract to cases where willful FLSA violations have been found. For example, the court held that a willful violation had occurred in *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999). The employer in that case had been investigated twice by U.S. Department of Labor for unpaid overtime wages, made assurances to the DOL that it would comply in the future, then failed to make the promised compensation corrections. *Id.* Similarly, in *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1294 (3d Cir. 1991), the court held that an employer willfully violated the FLSA where a company leader had paid commissions, rather than hourly wages, because "the overhead was too high on paying the hourly rate," and had instructed an affiliate to "hush it up" regarding concerns of FLSA violations.

The instant case is more akin to *Tyger*, 832 F. App'x at 116, where the district court held and the court of appeals affirmed that plaintiffs could not carry their burden to adduce evidence

that the defendant "either knew or suspected that their practices were violative of the FLSA or recklessly disregarded the possibility of same." For that reason, in *Tyger* the FLSA's presumptive two-year statute of limitations applied. The same conclusion should be reached in this case as well.

## V.    **CONCLUSION**

Based on the foregoing undisputed facts, authority, and arguments, TEKsystems, Inc. respectfully requests that the Court grant its Motion for Partial Summary Judgment, and apply the Fair Labor Standards Act's presumptive two-year statute of limitations period to all FLSA claims asserted by collective members in this litigation.

DATED: August 29, 2025                           Respectfully submitted,


By: */s/ Andrew Scroggins*
    Andrew L. Scroggins
    ascroggins@seyfarth.com
    Noah A. Finkel
    nfinkel@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive
    Suite 8000
    Chicago, Illinois 60606-6448
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000

    *Attorneys for Defendant TEKsystems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Andrew Scroggins*
Andrew L. Scroggins