**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| MICHAEL THOMAS, MARIA CONYERS-JORDAN, AUSTIN, SHERMAN, LYNDA ALEXANDRA MAHER, AVA DORE, RACHEL RICHENBERG, and EMILY BURKE, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEKSYSTEMS, INC.,<br><br>Defendant. | Civil Action No.  2:21-CV-00460-WSS |

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  STATEMENT OF UNCONTESTED MATERIAL FACTS ............................................ 3

     A.   TEK's Business And The Recruiter Role ................................................. 3

     B.   The Recruiter Role ................................................................................... 3

     C.   TEK's Expectations for Exempt Recruiters .............................................. 4

     D.   Recruiters Are Highly Specialized ........................................................... 4

     E.   Recruiters Operate With Little Supervision .............................................. 5

     F.   Recruiters Work Directly With TEK's Clients And Help Shape Their
          Hiring Needs To Support TEK's And Its Customers' General Business
          Operations ................................................................................................. 5

     G.   The Work Performed By Recruiters Is Of Substantial Importance To
          TEK's Clients ............................................................................................ 5

     H.   The Connected Database Is Not A Record Of All Activities Performed By
          Recruiters Or The Amount of Time Spent On The Activity, And It Does
          Not Reflect Whether The Recruiter Is Exercising Discretion and Judgment ......... 5

III. LEGAL ARGUMENT ................................................................................................. 6

     A.   Burden Of Proof And Legal Standard ...................................................... 6

     B.   TEK Recruiters' Primary Duties Are Administrative ............................... 8

     C.   TEK Recruiters *Primarily* Perform Work That Is "Directly Related" To
          Management Or General Business Operations .......................................... 8

          1.   Recruiters' primary duties are directly related to TEK's
               management or general business operations ................................. 9

          2.   Recruiters' primary duties are directly related to the management
               or general business operations of TEK's customers ...................... 13

          3.   Plaintiffs' reliance on the administrative/production dichotomy is
               unavailing .................................................................................... 15

     D.   TEK Recruiters Exercise Discretion And Independent Judgment ........................ 16

        1.      The use of screening and sourcing tools is consistent with Recruiters' exercise of discretion and independent judgment. ................. 17

        2.      Sharing decision-making with AMs and customers is consistent with Recruiters' exercise of discretion and independent judgment. ......... 18

IV.    CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................................................1

*Andrade v. Aerotek, Inc.*,
700 F. Supp. 2d 738 (D. Md. Mar. 5, 2010) ...................................................5, 6, 16

*Antiskay v. Contemp. Graphics & Bindery Inc.*,
2013 WL 6858950 (D.N.J. Dec. 26, 2013)...............................................................3

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2014 WL 6684343 (E.D. Pa. Nov. 24, 2014) ...........................................................2

*Avery v. TEKsystems, Inc.*,
2024 WL 4281442 (N.D. Cal. Sept. 23, 2024) ............................................... *passim*

*Bedoya v. Am. Eagle Express, Inc.*,
2022 WL 3443983 (D.N.J. Aug. 17, 2022) ...............................................................2

*Bothell v. Phase Metrics, Inc.*,
299 F.3d 1120 (9th Cir. 2002) ...................................................................................3

*Burton v. Teleflex Inc.*,
707 F.3d 417 (3d Cir. 2013)................................................................................1, 15

*Carter v. City of Phila.*,
417 F. Supp. 3d 639 (E.D. Pa. 2019) .......................................................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................................1

*Delodder v. Aerotek, Inc.*
471 Fed. Appx. 804 (9th Cir. 2012)....................................................................5, 14

*DeLodder v. Aerotek, Inc.*, Case No. CV 08-06044 DMG (AGRx),
2010 WL 11506881 (C.D. Cal. Aug. 16, 2010).......................................................14

*Deluca v. Farmers Ins. Exch.*,
386 F. Supp. 3d 1235 (N.D. 2019)............................................................................16

*In re Enter. Rent-a-Car Wage & Hour Employ. Pracs. Litig.*,
2012 WL 4356762 (W.D. Pa. Sept. 24, 2012).....................................................7, 10

*In re Farmers Ins. Exch.*,
   481 F.3d 1119 (9th Cir. 2007) ...................................................................................12, 14

*Foster v. Nationwide Mut. Ins. Co.*,
   710 F.3d 640 (6th Cir. 2013) .................................................................................................3

*Fowler v. OSP Prevention Grp., Inc.*,
   38 F.4th 103 (11th Cir. 2022) ............................................................................................11

*Goff v. Bayada Nurses, Inc.*,
   424 F. Supp. 2d 816 (E.D. Pa. 2006) ................................................................................5, 9

*Gordon v. Model N, Inc.*,
   2016 WL 3194240 (N.D. Cal. June 9, 2016) ......................................................................10

*Hendricks v. Total Quality Logistics, LLC*,
   694 F. Supp. 3d 1005 (S.D. Ohio 2023) .............................................................................10

*Hudkins v. Maxim Healthcare Servs., Inc.*,
   39 F. Supp. 2d 1349 (M.D. Fla. 1998), *aff'd* 176 F.3d 493 (11th Cir. 1999) .......................4, 5

*Martin v. Cooper Elec. Supply Co.*,
   940 F.2d 896 (3d Cir. 1991)...................................................................................................7

*McAllister v. Transamerica Occidental Life Ins. Co.*,
   325 F.3d 997 (8th Cir. 2003) .............................................................................................12, 14

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
   862 F.3d 847 (9th Cir. 2017) ..................................................................................................7

*McLaughlin v. Nationwide Mut. Ins. Co.*,
   2004 WL 1857112 (D. Or. Aug. 18, 2004).........................................................................14

*O'Bryant v. City of Reading*,
   197 Fed. Appx. 134 (3d. Cir. 2006)...................................................................................2, 3

*Ogden v. CDI Corp.*,
   2010 WL 2662274 (D. Ariz. July 1, 2010) ........................................................................17

*Quintiliani v. Concentric Healthcare Sols.*,
   944 F. Supp. 2d 738 (D. Ariz. 2013), *rev'd on other grounds*, 672 Fed. Appx.
   643 (9th Cir. 2016).................................................................................................................5

*Robinson-Smith v. Gov't Emps. Ins. Co.*,
   590 F.3d 886 (D.C. Cir. 2010) ............................................................................................15

*Roe-Midgett v. CC Servs., Inc.*,
   512 F.3d 865 (7th Cir. 2008) .................................................................................................3

iv

*Rood v. R&R Express, Inc.*,
  2022 WL 1082481 (W.D. Pa. Apr. 11, 2022)................................................................7

*Su v. F.W. Webb Co.*,
  110 F.4th 391 (1st Cir. 2024)................................................................................7, 10

*Thomas v. TEKsystems, Inc.*,
  2025 WL 756067 (W.D. Pa. Mar. 10, 2025) ...............................................................2

*Tooker v. BlueJay Sols., Inc.*,
  715 F. Supp. 3d 1022 (W.D. Mich. 2024) ..............................................................7, 8

*Walsh v. Unitil Serv. Corp.*,
  64 F.4th 1 (1st Cir. 2023)..............................................................................8, 10, 11

*Webster v. Pub. Sch. Emps. of Wash., Inc.*,
  247 F.3d 910 (9th Cir. 2001) ....................................................................................5

*White v. APFS LLC*,
  2025 WL 438201 (N.D. Ill. Feb. 7, 2025) ..............................................................5, 6

**Statutes**

FLSA ..............................................................................................................................2, 3

**Other Authorities**

29 C.F.R. § 541.200 ..........................................................................................................2

29 C.F.R. § 541.201 ..........................................................................................................2

29 C.F.R. § 541.201(a)....................................................................................................4, 5

29 C.F.R. § 541.201(b) .......................................................................................................9

29 C.F.R. § 541.201(c).....................................................................................................10

29 C.F.R. § 541.202(b) .......................................................................................................3

29 C.F.R. § 541.202(c).........................................................................................12, 15, 16

29 C.F.R. § 541.203(e)......................................................................................................10

29 C.F.R. § 541.600 ..........................................................................................................2

Fed. R. Civ. P. 56(c)(2)......................................................................................................1

Fed. R. Civ. P. 56(e)(2)......................................................................................................1

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs move for partial summary judgment on the issue whether those working for TEK in its Recruiter role are properly classified as exempt. (ECF No. 186.) Plaintiffs bring their motion on behalf of a certified Fair Labor Standards Act ("FLSA") collective and certified Rule 23 classes under Massachusetts, New York, Pennsylvania, and Washington state law. (*Id.*)

Plaintiffs and TEK present sharply opposing views of the facts that preclude summary judgment.[1] Plaintiffs describe collective and class members as "entry-level Recruiters," performing routine and mundane tasks at the explicit direction of others and with little decision-making authority, under constant and close supervision, in roles akin to "production" or "sales." As set forth in detail in the concurrently filed TEK's Responses to Plaintiffs' Statement of Material Undisputed Facts, referenced throughout this brief as "DSOF," Plaintiffs' "facts" are overwhelmingly disputed by the uncontroverted evidence is this case, or even wholly unsupported by the evidence Plaintiffs cite.  In contrast, TEK submits a record demonstrating that its Recruiters enter the role with experience (DSOF 7), work collaboratively and in partnership with co-workers and customers (*id.*, 21, 29, 36, 43, 52-53), and apply their specialized knowledge of technical skillsets and the labor market for people who possess those skills (*id.*, 10, 18, 21), for the benefit of TEK and TEK's customers (*id.*, 2, 25, 29). In the performance of their work, TEK's Recruiters regularly use their discretion and independent judgment across the full spectrum of recruiting duties, from learning about TEK's customers, defining the requirements for customers' roles, finding the right sources for candidates who possess the necessary technical and professional skills, making initial screening decisions to

---

[1] TEK's Responses to Plaintiffs' Statement of Material Undisputed Facts and Defendant's Further Statement of Material Facts are filed concurrently and referenced in TEK's Memorandum of Opposition as "DSOF."

narrow the pool of candidates, closely evaluating and validating the skills those candidates possess to find the best person to match to the customer's job requirements, presenting the candidate to the customer in a way that demonstrates how the candidate fits the role, negotiating with the candidate regarding their pay rate and other terms and conditions of employment, and converting that candidate to a consultant for whom they provide management oversight once the assignment begins. All this is done with little supervision by others at TEK.

Recruiters' work also is of substantial importance to both TEK's customers and to TEK. Recruiters' efforts impact the ability of TEK's customers to complete business projects that they have deemed important; TEK's Recruiters possess the expertise needed to find people to perform the technical work the customers need and to provide management oversight of the consultants performing that work. For TEK, Recruiters' efforts contribute to the Company's marketplace reputation for finding the right talent to complete hard to fill technical projects. Recruiters' efforts also go directly to TEK's bottom line.

T he Recruiter role satisfies the administrative exemption when performed according to TEK's reasonable expectations and as many in the role describe it. Some are paid so well they satisfy the highly compensated employee exemption as well. Contrary to Plaintiffs' position, TEK Recruiters are not "production" employees, since TEK does not "produce" talent, and the talent recruited by TEK is not its market offering. Instead, TEK offers its customers the services that the talent perform to complete projects for the customers.

At this stage, the Court is not being asked to resolve once and for all whether the exemption was appropriate for all TEK Recruiters. Rather, the Court is being asked whether there are undisputed facts, taken in the light most favorable to TEK, that show none of the hundreds of collective and class action members could have satisfied the exemption. The record

2

does not support that conclusion, and Plaintiffs' motion should be denied.

## II.    STATEMENT OF UNCONTESTED MATERIAL FACTS

### A.    TEK's Business And The Recruiter Role

TEK is a global business and technology firm that assists its customers in achieving their business transformation, customer experience, and business goals. (DSOF 89.) IT talent services are the core of TEK's business and can be grouped at a high level into three categories.[2]  TEK employs people in sales roles, such as Account Managers ("AM"), who identify and build relationships with customers that would benefit from TEK's IT talent services. TEK employs people in recruiting roles who work to find the right talent to meet the customer's talent need. (DSOF 94.) TEK makes its money from the services that its consultants provide to TEK's customers. (DSOF 95-97.)  A TEK recruiter negotiates with the candidate the pay rate amount that the candidate will accept to perform the work. (*Id*.) The recruiter also negotiates with the candidate other conditions of employment. (*Id*.)

### B.    The Recruiter Role

Recruiters function to understand TEK's customers, their business projects, and their labor needs, and to apply their specialized knowledge of the demanding and competitive IT labor market to find the best talent to perform that work, validate that the talent possesses the relevant skills, and secure their agreement to provide their services to the customer. (DSOF 101.)

In order to become a Recruiter at TEK, one must first be a Recruiter Trainee, complete a 13-week training program, and then demonstrate their ability to independently perform the job of

---

[2] First, TEK offers staff augmentation, which refers to placing consultants with specific skills on assignment at customer companies. (DSOF_.) Second, TEK offers capacity solutions, which involves assembling teams of workers for customers who need a larger or more specialized workforce.   Total management services are the most advanced and comprehensive type of service and involves outsourcing and managing an entire IT function for a customer.

3

a Recruiter. (DSOF 99-100.)

### C. TEK's Expectations for Exempt Recruiters

TEK's basic expectations for Recruiters are set out in the job description for the role and demonstrate the exempt nature of the job. (DSOF 11, 29.).  Recruiters may do this in an infinite variety of ways. Recruiters do more than just match keywords on a resume to the words in a particular job requirement. (DSOF 38.)[3] For TEK Recruiters, identifying candidates who may possess relevant skills is only the beginning of the inquiry. (DSOF 120.) Recruiters do not simply trust what a candidate has put on a resume. Recruiters decide which candidates to reject, which to pursue, and which to advance through the process for submission to the customer. (DSOF 121.) Some Recruiters present candidates directly to TEK's customers. (DSOF 29.) For those Recruiters who first present to an AM, it is the Recruiters decision who to present. (*Id.*) AMs work in partnership with Recruiters, not watching over or second guessing the work of the Recruiter. (*Id.*) The Recruiters are expected to negotiate pay rates and other terms and conditions of employment with candidates and customers. (*Id.*) TEK expects Recruiters to manage consultants after they have been placed with a customer. (*Id.*) Among other things, Recruiters provide consultants with coaching, performance feedback, and discussions about future assignments.

### D. Recruiters Are Highly Specialized

Recruiters are highly specialized in their knowledge and training.  During their time as a Recruiter Trainee, they receive extensive training.  After being elevated to Recruiter they

---

[3] According to TEK's Senior V.P. of Talent Delivery, the "art of recruiting" requires going beyond key word matching: "It's not just do the buzz words match, because many buzz words match, and the person is absolutely positively not the right person for the role. Because [candidates also know] that you have to have the right buzz words on your resume to get hits in search and match. … So a recruiter has to be able to discern between this person has all the right buzz words and jargon and they can actually do the job."

4

specialize by skill set, vertical knowledge, or role.

### E.    Recruiters Operate With Little Supervision

In some instances, a Recruiter may have been supervised by an AM.  Many Recruiters describe that relationship as partnership with the AM to fill client requirements.  That model has become less common, and in recent years most Recruiters have a Recruiter Lead as a supervisor. Many Recruiters who report up to a Recruiter Lead say that they still manage their own days, touching base periodically (not daily), making their own decisions how to source candidates, which candidates to interview, which candidates are best qualified for the requirements they are working on, and which candidates to present.

Recruiters and others attend Red Zone meetings to discuss what they are working on and what new opportunities are available, but not how to do their jobs.  TEK tracks and shares with Recruiters certain metrics about their performance.  These are not quotas.  The performance metrics are used primarily to coach Recruiters.

### F.    Recruiters Work Directly With TEK's Clients And Help Shape Their Hiring Needs To Support TEK's And Its Customers' General Business Operations

Recruiters may interact directly with clients at any stage of the process.  Recruiters may be involved at the outset when defining job requirements, when presenting a candidate, for any other time a customer needs insight into labor market conditions.

### G.    The Work Performed By Recruiters Is Of Substantial Importance To TEK's Clients

Recruiters fill the recruiting function for TEK's customers, working to find the best qualified candidates for the customers' IT roles.  These roles commonly involve business operations that are highly critical to the customers' business operations.

### H.    The Connected Database Is Not A Record Of All Activities Performed By Recruiters Or The Amount of Time Spent On The Activity, And It Does Not Reflect Whether The Recruiter Is Exercising Discretion and Judgment

5

Recruiters use TEK's Connected database for a variety of purposes. Among those purposes is recording certain activity, generally for the purposes of sharing information among Recruiters and tracking the progress of candidates and consultants. The percentage distribution of "activities" in Connected is a meaningless number that says nothing about how Recruiters spend their time. Many activities undertaken by Recruiters are not included in the data, many "activities" in the dataset memorialize candidate status, not actions by Recruiters. Across the dataset analyzed for this litigation, Recruiters averaged very few activities per day: 5.04 Attempted Contacts, 2.94 G2s, 2.37 Calls, with no other category reaching even one per day.

## III.    LEGAL ARGUMENT

### A.    Burden Of Proof And Legal Standard

Summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). At this stage, courts do not make credibility determinations or weigh conflicting evidence. *Burton v. Teleflex Inc.*, 707 F.3d 417, 428-29 (3d Cir. 2013). The nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The requirements that an employee must satisfy to meet the FLSA's administrative exemption are: (1) their primary duties involve the performance of office or non-manual work "directly related" to the management or general business operations of their employer or their employer's customers; (2) their primary duties include "the exercise of discretion and independent judgment with respect to matters of significance;" and (3) they are compensated on a salary or fee

6

basis of not less than the level set forth in 29 C.F.R. § 541.600. 29 C.F.R. § 541.200.[4]

Courts and regulations offer further guidance on each element. An employee's "primary duty" is defined as work that involves more than 50% of the employee's time; "this standard is flexible." *O'Bryant v. City of Reading*, 197 Fed. Appx. 134, 136 (3d Cir. 2006).[5] "The phrase 'directly related to the management or general business operations'" of the employer or the employer's customers describes work "directly related to assisting with the operation of the business . . ., as distinguished from, for example, working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201; *O'Bryant*, 197 Fed. Appx. at 136. The exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(b).[6]

Importantly, the U.S. Supreme Court has expressly instructed that "the FLSA gives no 'textual indication' that its exemptions should be construed narrowly," so "there is no reason to give [the exemptions] anything other than a fair (rather than a 'narrow') interpretation… [T]he FLSA has over two dozen exemptions in § 213(b) alone [and] [t]hose exemptions are as much a

---

[4] *See also Thomas v. TEKsystems, Inc.*, 2025 WL 756067, at *13 n.6 (W.D. Pa. Mar. 10, 2025) (explaining how "Plaintiffs' state law overtime wage claims are similar to their FLSA claims").
[5] Indeed, Plaintiffs' counsel emphasized that the "FLSA *does not* use 'time' as a component to evaluate the exemption" in *Avery*. *See* ECF No. 28 at 19, Case No. 3:22-cv-02733-JSC (N.D. Cal. 2022). TEK respectfully requests that the Court take judicial notice of this document, as it is a matter of public record on another court's docket. *See U.S. v. Hoffert*, 2018 WL 4828628, at *1 (W.D. Pa. Oct. 4, 2018) (court may take judicial notice of public filings from another docket).
[6] For the highly compensated employee ("HCE") exemption, the threshold payment amounts are $100,000 per year from August 23, 2004 until December 31, 2019, and $107,432 per year thereafter. *See id*. "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c). "Thus, a [HCE] will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities" of an administrative employee. *Id*. "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.

part of the FLSA's purpose as the overtime-pay requirement… We thus have no license to give the exemption anything but a fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88-89 (2018) (internal citations omitted).

While TEK will bear the burden at trial to prove its affirmative defense that Recruiters were properly classified as exempt, at this stage it is Plaintiffs' burden to show that the defense fails on a class- and collective-wide basis. In other words, it is not enough for Plaintiffs to show that *some* of TEK's Recruiters did not perform their primary job duties in an exempt way— Plaintiffs must show that *none* of TEK's Recruiters did so. Plaintiffs have failed to meet their burden, as there are abundant disputes over material facts necessary to determine whether the Recruiter role at TEK satisfies the administrative and/or highly compensated employee exemptions when performed in line with TEK's reasonable expectations and in the manner described by numerous witnesses working in or familiar with the Recruiter role.[7]

### B.    TEK Recruiters' Primary Duties Are Administrative

There is a genuine issue of material fact regarding the primary duties of Recruiters. Plaintiffs contend their primary job duties are merely "to screen and match IT job candidates for open roles with TEK's clients and to submit candidates who match with the open roles to TEK's AMs." (DSOF 29.) In contrast, TEK contends that its expectations for the role, and the evidence adduced through discovery, show that primary job duties of Recruiters are much broader, as reflected in the job description. (DSOF 29.) This dispute alone is cause to deny Plaintiffs' Motion.

### C.    TEK Recruiters *Primarily* Perform Work That Is "Directly Related" To Management Or General Business Operations

---

[7] *Bedoya v. Am. Eagle Express, Inc.*, 2022 WL 3443983, at *12 (D.N.J. Aug. 17, 2022) (plaintiffs must provide evidence that issue is susceptible to class-wide proof that is not merely speculative); *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014 WL 6684343, at *5 (E.D. Pa. Nov. 24, 2014) (anecdotal evidence insufficient for class-wide liability).

Administrative employees may satisfy the "directly related" prong of the exemption in either of two phases: by performing work "directly related to assisting with the operation of the business" of the employer, or of the employer's customers. 29 C.F.R. § 541.201. Administrative work is distinguishable from "working on a manufacturing production line or selling a product in a retail or service establishment." *Id*. The parties dispute fundamental facts relevant to this analysis, but viewing the facts in the light most favorable to TEK leads to the conclusion that Recruiters satisfy the prong in both ways and are not engaged in so-called "production" work.

Crucially, the parties disagree what TEK's "product" is. Plaintiffs invoke the "administrative/production dichotomy" to contend that TEK Recruiters do not meet the "directly related to" portion of the regulation. (Motion at 10-11.) Their argument is that the work of Recruiters only goes to TEK's "business function" and "marketplace offering," which they assert is "candidate placements" or "recruiting services." (Motion at 10-11.) TEK disagrees, pointing out that its product is the services provided by the consultants placed on assignment to perform work for TEK's customers. To put a finer point on it, TEK's customers do not pay for the time a Recruiter spends finding the right match for the customers' requirements; customers pay for the time spent by the consultant performing the work to which they were assigned.  TEK's customers pay TEK based on the hours that the consultant works. TEK's profits reflect the difference between the amount that TEK bills the customer for each hour the consultant works and the amount that TEK pays the consultant for each hour worked (less other expenses such as overhead, etc.).  In other words, customers do not pay TEK to provide consultants; they pay TEK for the services that the consultants provide.  The parties' fundamental disagreement over what is TEK's market offering is sufficient grounds to deny Plaintiffs' Motion.

        **1.**      **Recruiters' primary duties are directly related to TEK's management or general business operations.**

Courts routinely find that recruiters satisfy the administrative exemption, including the "directly related" prong.[8] TEK, like the employer in *Hudkins*, is in the business of ensuring that the consultants it places on assignment are capable of providing quality services to TEK's clients. TEK's Recruiters promote, service, and administer TEK's general business operations.[9]

Another example is *Delodder v. Aerotek*, 471 Fed. Appx. 804 (9th Cir. 2012), a case that challenged the exempt classification of recruiters at one of TEK's sister companies, Aerotek. The appellate court upheld the district court finding that "all class members were engaged in 'meeting the needs of Aerotek's customer companies,' a role that is 'directly related to . . . [Aerotek's] general business operations,' and therefore exempt." *Id*. at 807.[10]

---

[8] See *Hudkins v. Maxim Healthcare Servs., Inc.*, 39 F. Supp. 2d 1349 (M.D. Fla. 1998), *aff'd* 176 F.3d 493 (11th Cir. 1999), concerned recruiters working for a defendant employer that was in the business of providing nurses to clients with a need for nursing services. *Id*. at 1349-50. The plaintiff worked for the defendant as a recruiter whose job duties included: (1) recruiting nurses capable of providing nursing services to the defendant's clients; (2) placing nurses who would provide the best services to the defendant's clients; (3) approving higher rates of pay for nurses; (4) counseling and disciplining nurses; and (5) participating in the termination of nurses. *Id*. at 1350. The court recognized that the "product" of the business was the **services provided by the contractors**, and not the services provided by the recruiter; accordingly, the plaintiff was properly classified as an exempt administrative employee, and not a production employee.

[9] *See also Webster v. Pub. Sch. Emps. of Wash., Inc.*, 247 F.3d 910, 911-12, 916 (9th Cir. 2001) (field representatives employed by a union to provide collective bargaining and contract administration services to union members provided administrative services to clients and were not "production" workers; a contrary result "would render the distinction between administrative work and production meaningless").

[10] *See also Andrade v. Aerotek, Inc.*, 700 F. Supp. 2d 738, 746 n.7 (D. Md. Mar. 5, 2010) The administrative/production dichotomy described in 29 C.F.R. § 541.201(a), and relied upon by [plaintiff], supports, rather than alters, the court's analysis. *See* § 541.201(a) ("an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."). As a Recruiter, [plaintiff] provided an administrative human resources service to Aerotek's clients; she did not "produce" anything. Furthermore, as Aerotek points out, it is the services of the contractors that are the product of Aerotek's business, not the contractors themselves. *See Hudkins*, 39 F. Supp. at 1350 (finding that in the context of a nurse-staffing agency, the *nurses* a recruiter placed with the clients *produced* the services offered by the business); *Quintiliani v. Concentric Healthcare Sols.*, 944

In a ruling issued earlier this year, still another court held that a recruiter's primary duties are administrative.[11] Contrary to Plaintiffs' contentions (*see* Motion at 12), the extent to which Recruiters support TEK's ability to generate revenue underscores—not undercuts—the application of the administrative exemption in this context.[12] Plaintiffs ask this Court to follow the decision in *Avery v. TEKsystems, Inc.*, 2024 WL 4281442 (N.D. Cal. Sept. 23, 2024). However, the evidence submitted to the *Avery* court differs from the evidence submitted here. [13] The other cases on which Plaintiffs rely are readily distinguishable. Indeed, other than *Avery*, Plaintiffs do not cite *any* cases that analyzed recruiting roles in the context of the directly-related

---

F. Supp. 2d 738, 740, 745-46 (D. Ariz. 2013) (ruling that plaintiffs' primary duty as staffing coordinators for staffing firm was directly related to business operations because "the employee is not producing anything" and rather it was "the services of the temporary professionals that is the 'product' of [defendant's] business"), *rev'd on other grounds*, 672 Fed. Appx. 643 (9th Cir. 2016).

[11] *White v. APFS LLC*, 2025 WL 438201, at *10 (N.D. Ill. Feb. 7, 2025) Applying the administrative/production dichotomy, the court explained that the plaintiff's "work, including helping to establish a pipeline of interested and qualified candidates and suggesting them to fill specific job openings with [the defendant's] clients [ ], was not akin to production-line or retail work.". As "[p]lacing candidates with clients is how [defendant] makes money," the court explained, "it is hard to imagine tasks more directly related to running [defendant's] business."

[12] Plaintiffs do not dispute that Recruiters negotiate wages and other terms and conditions with candidates, but nevertheless contend that Recruiters' negotiating roles are too "minor" to satisfy the directly-related prong. (*Id*. at 14-15.) Plaintiffs are wrong as a matter of fact: Recruiters begin negotiating with candidates even during their initial discussions and must reach a pay rate that is attractive to the candidate while also ensuring a placement that is profitable for TEK. Plaintiffs also are wrong as a matter of law; recruiters' primary duties have been held to be administrative under purportedly similar circumstances where recruiters negotiate within a range set by others. *See, e.g.*, *Andrade*, 700 F. Supp. 2d at 742 (plaintiff recruiter would negotiate pay within range that was provided to her).

[13] The court did not address any of the cases discussed *supra* or their application to TEK and its Recruiters. *Id*. Moreover, the U.S. Supreme Court's instruction in *Encino Motorcars* that exemptions should be given a fair, textual reading and not a narrow reading, is controlling for Plaintiffs' FLSA claims in this case but did not apply to the purely California state law claims asserted in *Avery*. *See Davis v. Komoto Pharmacy, Inc.*, 2018 WL 3640555, at *4 (Cal.App. 5 Dist. 2018) (notwithstanding Encino Motorcars, "California law still requires exemptions to be narrowly construed.").

11

prong. Instead, Plaintiffs cite a slew of cases regarding salespeople.[14]  The record is clear that Recruiters are not in sales (TEK has a separate division responsible for sales) and do not perform sales duties. In addition, Plaintiffs do not identify any authority holding that recruiters' job duties are those of a salesperson, either with respect to recruiters generally or the work TEK's Recruiters perform specifically.[15] Indeed, relying on similar "evidence," Plaintiffs attempted and failed to persuade the *Avery* court of the same argument. *Compare* Plaintiffs' SOF ¶¶ 27-28 *with* ECF No. 100 at 15, Case No. 3:22-cv-02733-JSC (N.D. Cal. 2022).[16]

Plaintiffs rely on *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847 (9th Cir. 2017), to erroneously argue that Recruiters do not satisfy the administrative exemption because Recruiters only perform "marketplace offerings" of TEK. (Motion at 11.) This is incorrect as set forth above. As courts have held in similar contexts, **TEK's market offering is talent services, i.e., the work performed by the consultants it places to work at customers. TEK's market offering is not selling people.** As explained above, TEK's customers pay TEK based on the hours that the consultant works, not the time spent by Recruiters.

Similarly, Plaintiffs incorrectly interpret *Walsh v. Unitil Serv. Corp.*, 64 F.4th 1 (1st Cir. 2023). In assessing the jobs of electric grid controllers and utility gas dispatchers, the court in

---

[14] *See* Motion at 12-13, citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 898-900, 904 (3d Cir. 1991) (considering inside salespersons); *Rood v. R&R Express, Inc.*, 2022 WL 1082481, at *6 (W.D. Pa. Apr. 11, 2022) (considering whether logistics coordinator role was an inside salesperson); *In re Enter. Rent-a-Car Wage & Hour Employ. Pracs. Litig.*, 2012 WL 4356762, at *1, *18-19 (W.D. Pa. Sept. 24, 2012) (considering whether branch assistant manager role was an inside salesperson); *Su v. F.W. Webb Co.*, 110 F.4th 391, 392, 398-99 (1st Cir. 2024) (considering whether inside sales representative role was an inside salesperson).)
[15] *See Tooker v. BlueJay Sols., Inc.*, 715 F. Supp. 3d 1022, 1028 (W.D. Mich. 2024) (explaining that courts should focus on evidence regarding actual day-to-day activities in assessing employee's primary duty, rather than more general job descriptions).
[16] TEK respectfully requests that the Court take judicial notice of this document. *See Hoffert*, 2018 WL 4828628, at *1.

12

*Walsh* explained "it is often useful to identify and articulate the business purpose of the employer and (if necessary) the employer's customers. By 'business purpose' we mean the production or provision of 'the very product or service that the' employer or its customers 'offers to the public.'" *Id*. at 1, 6. But yet again, Plaintiffs wrongly conclude that TEK offers recruitment services, and that Recruiters provide that very same service. (Motion at 16.) As discussed, this is factually false, as well as contrary to what other courts analyzing recruiters have found.[17] Nonetheless, the Court need not decide now which contention is to be believed; the disputed material fact leads to the inevitable conclusion that Plaintiffs' Motion must be denied.

### 2. Recruiters' primary duties are directly related to the management or general business operations of TEK's customers.

The primary duties performed by Recruiters also are directly related to the management or general business operations of TEK's customers and are not production work.[18]

Recruiters unquestionably are directly involved in the running and servicing of TEK's clients' businesses. Recruiters serve as **personnel management and human resources** recruiters to staff and manage critical positions for a variety of TEK's customers in a variety of industries. Said another way, TEK Recruiters do not "produce" anything for TEK's clients. If

---

[17] Plaintiffs' reliance on *Tooker*, is also misplaced. As discussed above, Recruiters are not entry level. Further, while the court in *Tooker* noted as background that the plaintiffs were "at the bottom of the hierarchy," it did not rule that this affected whether their work was directly related to general business operations. 715 F. Supp. 3d at 1025. Instead, the court examined the plaintiffs' actual duties, which were carrying out day-to-day logistics for various customers that those customers had outsourced to the defendants. *Id*. at 1030. Since the customers accordingly "no longer had or needed their own logistics department," the plaintiffs "were not managing and could not manage this function" for them. *Id*. That is not the case here, where Recruiters' work is directly related to the general business operations of TEK's customers, as discussed further *infra*. As *Tooker* instructs, the court should reach that conclusion based on what Recruiters actually do, not labels that Plaintiffs wish to affix. *See id*. at 1028.

[18] To illustrate, lawyers in private practice who provide legal services to their clients may be considered producers as to their law firms, and consultants providing consulting services to their clients may be considered producers as to their consulting firms. But neither would be considered their clients' "producers."

anyone, the "producers" in this scenario are the consultants placed on assignment to the customer.

Consistent with that responsibility, the facts show that TEK reasonably expects Recruiters to, and Recruiters do in fact, directly and regularly interact with TEK's clients. This goes well beyond "the narrow context" of asking questions and providing information. (*See* Motion at 19.)[19]  Moreover, the talent services that TEK provides are not the primary business of the customers for which TEK provides services. TEK's ***customers'*** core business is ***not*** the services the TEK contractors provide.  What is critical is that Recruiters provide administrative human resources services to TEK's customers. *See* 29 C.F.R. §§ 541.201(c), 541.203(e). Plaintiffs contend that Recruiters' primary duties are not directly related to the management or general business operations of TEK's customers because Recruiters do not design systems, long-term processes, or programs for TEK's customers. (Motion at 15-16.)[20] However, Plaintiffs cite no authority holding that Recruiters must do any of these things to qualify as exempt. Indeed, the decisions holding that recruiters satisfy the administrative exemption show these considerations are irrelevant.  Instead, Plaintiffs (again) primarily rely on inapposite cases in the sales context.[21]

---

[19] *See* 29 C.F.R. § 541.201(b); *Goff v. Bayada Nurses, Inc.*, 424 F. Supp. 2d 816, 824 (E.D. Pa. 2006) (employee of nursing provider who "matched nurses to patients" and was involved in "case managing to ensure that the [nurse] retains a positive relationship with the client" was directly related to management or business operations of clients).

[20] This appears to be an argument based on DOL regulations that define work directly related to "the management or general business operations of the employer or the employer's customers" as "work directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). The regulations provide a non-exhaustive list of examples that may satisfy the exemption, including the few that Plaintiffs point to. 29 C.F.R. § 541.201(b).

[21] *See id*. at 16, citing *Su*, 110 F.4th at 399 (rejecting defendant's attempt to analogize its inside sales representatives to employees who developed long-term processes and programs because sales representatives simply did not perform these tasks); *Hendricks v. Total Quality Logistics, LLC*, 694 F. Supp. 3d 1005, 1024-25 (S.D. Ohio 2023) ("Any research [logistics account executive trainees] performed into market dynamics, a customer's business or a customer's

The other cases Plaintiffs cite are also inapplicable. In *Walsh*, 64 F.4th at 1, 8, the court of appeals held that the district court's attempt to analogize the employees' primary duties to areas such as "regulatory compliance" and "quality control" for their customers did not hold water because the employees did not actually do that work. *Fowler v. OSP Prevention Grp., Inc.*, 38 F.4th 103 (11th Cir. 2022), did not even concern the duties employees perform for customers.

Unlike in these cases, TEK Recruiters' duties are directly related to the management and general business operations of TEK's clients. There is no question that if customers hired direct employees to perform in-house all of the duties that Recruiters currently do for them, those direct employees would be administratively exempt even if the customer's hiring managers made the ultimate hiring decisions. The fact that customers look outside their companies to TEK Recruiters for support with these functions instead does not diminish the application of the administrative exemption to TEK Recruiters.  In sum, Recruiters support the general business operations of both TEK and TEK's customers and are not production employees.

### 3.    Plaintiffs' reliance on the administrative/production dichotomy is unavailing.

Plaintiffs premise their argument that Recruiters do not meet the "directly related to" portion of the regulation on the "administrative/production dichotomy" and the notion that the work of Recruiters only goes to TEK's "business function" and "marketplace offering." (Motion at 10-11.) Courts have made clear that the administrative/production dichotomy "is merely a tool to 'be employed . . . towards answering the ultimate question, whether work is 'directly related to management policies or general business operations'' rather than being considered 'an end in

---

potential needs was to promote future sales."); *Gordon v. Model N, Inc.*, 2016 WL 3194240, at *1, *3 (N.D. Cal. June 9, 2016) (finding that technical education consultant produced training materials to teach customers how to use the software that the defendant sold, i.e., "an ancillary product"); *In Re Enter. Rent-a-Car Wage & Hour Emp. Pracs. Litig.*, 2012 WL 4356762, at *18.)

itself.'" *Antiskay v. Contemp. Graphics & Bindery Inc.*, 2013 WL 6858950, at \*12 (D.N.J. Dec. 26, 2013) (quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002)). Indeed, "[m]any cases 'analyze the primary duty test without referencing the [ ] dichotomy at all." *Id*.[22]

As noted above, the administrative/production dichotomy is not a useful analytical tool in this instance, since the parties fundamentally disagree what is being "produced." Nonetheless, to the extent the Court considers its application here, the dichotomy supports the denial of summary judgment. As the dichotomy is described in the regulations, TEK Recruiters perform exempt administrative duties.[23] As discussed above, Recruiters are responsible for carrying out administrative tasks. Moreover, they meet that element not only for TEK's business, but for that of its customers. Notably, courts that have analyzed recruiters in particular under the dichotomy have rejected the notion that they are "producers." *See, e.g.*, *White*, 2025 WL 438201, at \*9-10; *Andrade*, 700 F. Supp. 2d at 746 n.7.

### D.     TEK Recruiters Exercise Discretion And Independent Judgment

The issues relevant to deciding this Motion are highly disputed. The phrase "exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision," but a lesser degree also satisfies the exemption. Employees also exercise the requisite discretion and independent

---

[22] *See also Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 650 (6th Cir. 2013) ("not all work is classified as either production or administrative, as this dichotomy does not fit all cases"); *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 872-73 (7th Cir. 2008) (The "typical example" of the dichotomy is a "factory setting, . . . an analogy that is not terribly useful" in a service context, much less a high-tech one.); *Bothell*, 299 F.3d at 1127 (The dichotomy is "but one analytical tool, to be used only to the extent that it clarifies the analysis [and o]nly when work falls squarely on the production side of the line has the administrative/production dichotomy been determinative.").

[23] *See* 29 C.F.R. § 541.201(a) ("an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment").

judgment:

> even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. § 541.202(c). To satisfy this standard, TEK Recruiters' primary duty need merely "*include*" the exercise of discretion and independent judgment, 29 C.F.R. § 541.202 (emphasis added). This stands in contrast to other FLSA exemptions that require a certain percentage of time on exempt work in order to be exempt.[24]

TEK has submitted facts to show that there are Recruiters who exercise discretion and independent judgment in the performance of their duties in multiple respects.

### 1. The use of screening and sourcing tools is consistent with Recruiters' exercise of discretion and independent judgment.

The evaluation of potential candidates for a specific role, or for placement in a role chosen specifically for that candidate, takes insight, judgment, and discretion and is often done by

---

[24] Most FLSA exemptions require that exempt work be an employee's "primary duty," for which an employee who spends more than 50 percent of their time on exempt work will satisfy the primary duty requirement. Other exemptions require an employee to engage in an activity "customarily and regularly," which can be satisfied by an employee engaging in that activity for as little as one to two hours per week for an hour or two at a time. 29 C.F.R. § 541.502 (FLSA's outside sales exemption); *id*. at § 541.701 ("customarily and regularly" is "a frequency which must be greater than occasional but which, of course, may be less than constant"); DOL WH Op. Ltr. FLSA2007-2 (Jan. 25, 2007); *see also Hantz v. Prospect Mortgage, LLC*, 2014 U.S. Dist. LEXIS 14359, at *17 (E.D. Va. Feb. 5, 2014) (sales-related activity outside of the office one or two hours a day, one or two times a week satisfies the test for being "customarily and regularly engaged away"). As low as that bar is, the bar for the frequency with which an employee must exercise discretion and independent judgment to be administratively exempt is even lower. The employee's work need only "include" discretion and independent judgment. 29 C.F.R. § 541.202.

Recruiters without tools or checklists.    Even for Recruiters who use tools for the initial identification of potential candidates, this is only the starting point of the inquiry.  In any event, it is well established that exempt employees can make use of a "best practices" manual, and that the use of even a detailed manual does not eliminate discretion and independent judgment.[25] Likewise, use of a "best practices" manual or even a detailed manual is consistent with the exercise of discretion and independent judgment.[26] Here, there is a genuine dispute of fact over whether Recruiters are constrained to "which database to search; whom to call," as Plaintiffs claim or the extensive discretion and independent judgment that some TEK Recruiters exercise.

**2.    Sharing decision-making with AMs and customers is consistent with Recruiters' exercise of discretion and independent judgment.**

Most Recruiters and AMs work together in partnership, and not with the AMs in supervisory roles over Recruiters.  Some Recruiters are the dominant decision-makers in that relationship.  Even a lesser degree of authority will suffice to show that one is free from immediate supervision and able to exercise discretion and independent judgment. As one court explained, there is no requirement that "decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review." *Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 894 (D.C. Cir. 2010). Further, the record shows that Recruiters' recommendations

---

[25] *See In re Farmers Ins. Exch.*, 481 F.3d 1119, 1129-30 (9th Cir. 2007); *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003) (holding that "just because [plaintiff] was required to follow detailed manuals does not mean she did not exercise discretion and independent judgment"); *McLaughlin v. Nationwide Mut. Ins. Co.*, 2004 WL 1857112, at *11 (D. Or. Aug. 18, 2004) ("virtually every employee in America . . . must follow company policies, procedures and guidelines").

[26] As the district court in *DeLodder* aptly stated: "Even if all Recruiters share a common duty to source and screen, it does matter if Recruiters carry out that duty by using discretion and independent judgment as opposed to serving as mere functionaries, or, similarly, if Recruiters carry out their duties under general as opposed to specific supervision." *DeLodder v. Aerotek, Inc.*, 2010 WL 11506881, at *15 (C.D. Cal. Aug. 16, 2010).

18

are accepted most of the time. [27] That the customer makes the final decision whether a consultant begins an assignment is also consistent with Recruiters exercising their discretion and independent judgment. Indeed, the regulations expressly contemplate multiple levels of oversight, including with the client having the final say.[28]

As such, it is disputed whether AMs and customers make the final decisions about who is submitted and accepted by a customer to begin an assignment, and the extent to which the recommendation by Recruiters influence the decisions that AMs and customers do make. (*See* Motion at 17-20. Plaintiffs again point to *Avery*, but that order is not binding or instructive here. In *Avery*, the court improperly refused to consider the statements of many of TEK's declarants on this issue on the grounds that they used the present tense when describing their work as Recruiters, though they were not in the role at that specific time. 2024 WL 4281442, at *8. In so doing, the court did not have the benefit of this evidence.[29] The evidence presented to the court also differed, since the court considered testimony only from California Recruiters and not the additional deposition testimony and declarations that TEK is submitting with this brief.[30] Without the benefit

---

[27] *See* 29 C.F.R. § 541.202(c) (emphasis added) ("The fact that an employee's decision may be subject to review and that **upon occasion** the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."); *Andrade*, 700 F. Supp. 2d at 741, 748 (ruling that an AMs' review of the recruiter's recommendations did not bar exemption, as "[t]he great majority (seventy-five percent) of candidates recommended by [her] were sent to the client" with rare or few questions).

[28] *See* 29 C.F.R. § 541.202(c) (emphasis added) ("The management consultant who has . . . drawn a proposed change in organization may have the plan reviewed or revised by superiors *before it is submitted to the client* [i.e., for approval].").

[29] To be clear, the declarants did describe their work as Recruiters, and the court's failure to consider their statements violates the summary judgment standard that evidence is to be viewed in a light most favorable to the non-moving party. *See Burton*, 707 F.3d at 425, 428 ("By crediting the testimony of [one party's] employees and disregarding the [other party's] conflicting testimony, the District Court improperly made credibility determinations.").

[30] It is also noteworthy that local rules differ between the two jurisdictions. In the Norther District of California, Plaintiffs did not submit a separate statement of purported undisputed material facts to which TEK could respond directly.

of all that information, the *Avery* court's finding against TEK is not instructive here.[31]

Under these circumstances, which candidate Recruiters decide to recommend based on their discretion and independent judgment is indisputably significant—both to TEK and its customers.[32] And there is a genuine dispute of fact whether Recruiters do so.

## IV.    CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment asks the Court to hold on a collective and class basis, for hundreds of people, that TEK's Recruiter role cannot satisfy the administrative exemption. Resolving the question whether the exemption applies is highly fact-dependent, and the facts that are material to deciding that question are hotly disputed. For these and all the foregoing reasons, Defendant respectfully requests that Plaintiffs' motion for partial summary judgment be denied in its entirety.

---

[31] Notably, the court in *Avery* did find correctly that "Recruiters had discretion in deciding how to source candidates and over which candidates to present," undercutting Plaintiffs' argument that Recruiters' work is "repetitive, recurrent, [and] routine." (Motion at 20); 2024 WL 4281442, at *9. Although the court ultimately determined that Recruiters' discretion is not significant because there were "two additional levels of oversight"—the AM and the customer—that conclusion is deeply flawed. Most importantly, the court disregarded the parties' dispute on the factual question of the extent of this "oversight." Second, the court acknowledged that the decision as to which candidates to send to the customer still "may be significant," even if the customer has oversight of the final decision. *Id*. at *9.

[32] Plaintiffs' other cases are distinguishable. In *Deluca v. Farmers Ins. Exch.*, 386 F. Supp. 3d 1235, 1260 (N.D. 2019), the court found that the plaintiff investigators simply "turned over the facts they discovered during their investigation, without regard to whether the facts were good or bad" and without "presenting ultimate findings." In contrast as noted above, Recruiters critically evaluate whether candidates are good or bad fits for TEK's clients. As to *Ogden v. CDI Corp.*, 2010 WL 2662274, at *2-5 (D. Ariz. July 1, 2010), and *Carter v. City of Phila.*, 417 F. Supp. 3d 639, 650-51 (E.D. Pa. 2019), those cases were both decided based on the "directly related" prong, not on whether the plaintiffs exercised discretion and independent judgment.

DATED: October 10, 2025                          Respectfully submitted,


By: */s/ Andrew Scroggins*
    Andrew L. Scroggins
    ascroggins@seyfarth.com
    Noah A. Finkel
    nfinkel@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive
    Suite 8000
    Chicago, Illinois 60606-6448
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000

    *Attorneys for Defendant TEKsystems, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Andrew Scroggins

Andrew L. Scroggins

320227746