**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

|  |  |
|---|---|
| MICHAEL THOMAS, MARIA CONYERS-JORDAN, AUSTIN SHERMAN, LYNDA ALEXANDRA MAHER, AVA DORÉ, RACHEL RICHENBERG, and EMILY BURKE, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>TEKSYSTEMS, INC.,<br><br>          Defendant. | Civil Action No. 2:21-CV-00460-WSS |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF
THE COURT'S FEBRUARY 11, 2026 OPINION AND ORDERS**

Defendant TEKsystems, Inc. ("TEK"), pursuant to Federal Rule of Civil Procedure 54(b), respectfully requests that the Court reconsider the portion of its February 11, 2026 Memorandum Opinion (ECF No. 213, or the "Opinion") and Orders (ECF Nos. 214-15, or the "Orders") granting Plaintiffs' Motion and holding that there is no genuine dispute of material fact whether TEK's Recruiters satisfy the Fair Labor Standards Act ("FLSA") administrative exemption.

First, the Opinion relied on *Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1994) for the premise that the U.S. "Supreme Court has long held that exemptions from the FLSA are to be narrowly construed against the employer." (ECF No. 213, or the "Opinion," at 8 (citing *Reich*, 13 F.3d at 694).) The U.S. Supreme Court explicitly rejected this approach in *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88-89 (2018) ("*Encino*"). This misstated standard pervades the Opinion, construing the analysis in favor of Plaintiffs and against TEK, rather than giving the "fair" reading of the exemption that the U.S. Supreme Court has instructed should be applied.

Second, the Opinion shifted the summary judgment burden of proof to TEK, the non-moving party, to establish that the administrative exemption was appropriate for all Recruiters. However, at this stage it was only TEK's burden to show that there is a genuine dispute of material fact as to whether *any* of the hundreds of collective and class action members satisfy the exemption. The record is replete with genuine disputes of material fact.

Third, the Opinion overlooked, misapplied, and/or misconstrued relevant authority and facts at key points in its analysis of the administrative exemption. As but one example, the Opinion concluded that Recruiters are performing "production" work for TEK but did not give a considered analysis that Recruiters are providing *non*-production work to TEK's *customers*.

## I.    LEGAL STANDARD

Fed. R. Civ. P. 54(b) permits the Court to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under [FRCP] 54(b)."); *Foster v. Westchester Fire Ins. Co.*, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012) ("Strictly speaking, district courts have more discretion in reconsidering interlocutory orders than in revising final judgments."). Indeed, "reconsideration of [interlocutory] orders may be had even if the movant cannot show" one of the particular grounds permitting reconsideration of final orders, so long as the movant establishes "good cause for why the court should revisit its prior decision." *See Qazizadeh*, 214 F. Supp. 3d at 295.

Plaintiffs' Motion did not seek a final ruling in their favor on the entire case, but only the specific issue of TEK's administrative exemption defense, leaving remaining issues to be resolved at trial. Therefore, Rule 54(b) provides the Court discretion to revise its Opinion and Orders.

## II.    ARGUMENT

### A.    The Opinion Applied An Incorrect Standard For Reviewing Plaintiffs' Motion For Partial Summary Judgment.

#### 1.    Supreme Court Precedent Requires "Fair" Interpretation of Exemptions.

In 2018, the U.S. Supreme Court issued a decision favorable to employers, holding that FLSA exemptions should ***not*** be narrowly construed.

> The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. **We reject this principle as a useful guidepost for interpreting the FLSA.** Because the FLSA gives no "textual indication" that its exemptions should be construed narrowly, **"there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation."** The narrow-construction principle relies on the flawed premise that the FLSA "'pursues'" its remedial purpose "'at all costs.'" But the FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement. **We**

**thus have no license to give the exemption anything but a fair reading.**
*See Encino*, 584 U.S. at 88-89. (emphasis added and internal citations omitted).

The *Reich* decision cited in the Opinion (at 8) is no longer good law.  The Third Circuit, following *Encino*, has emphasized that "'a fair reading' of the FLSA, neither narrow or broad, is what is called for." *Sec'y U.S. Dep't of Lab. v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019) (quoting *Encino*); *Lundeen v. 10 W. Ferry St. Ops. LLC*, 156 F.4th 332, 339 (3d Cir. 2025) (*Encino* "reject[ed] the 'flawed premise that the FLSA pursues its remedial purpose at all costs'").

Here, the Opinion starts from the now-rejected premise that "exemptions from the FLSA are to be narrowly construed against the employer" (Opinion at 8), and that approach permeates all that follows. The Court should reconsider its Opinion and Orders and, rather than "narrowly construe" the FLSA exemptions in favor of the plaintiff-employees, apply a "fair reading," "neither narrow or broad," of the exemptions.

### 2.    The Opinion Misapplied The Burden Of Proof.

Rule 56 imposes the initial burden of proof on the movant to justify summary judgment, not the nonmovant to resist summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmovant would have the burden of proof on the claim or defense at trial, the movant can show "that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof" to satisfy this initial showing. *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 456 (W.D. Pa. 2015). But then the nonmoving party still can defeat summary judgment by "showing that there is a *genuine issue for trial* . . . ." *Gitzen v. S&S, Inc.*, 2021 WL 6286382, at *1 (W.D. Pa. Nov. 23, 2021). And in any event, the court must draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boyle v. Cnty.*

3

*of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

Here, the Opinion placed the burden of proving the administrative exemption on TEK. (Opinion at 8 ("The partial motion for summary judgment for determination of TEK's classification of Recruiters was brought by Plaintiffs, but the employer (TEK) bears the burden of proving that an employee satisfies the administrative exemption test . . . .") While TEK bears the ultimate burden of proof on whether Recruiters satisfy the administrative exemption, it did not have to carry that burden to defeat Plaintiffs' Motion. Rather, TEK had to show that there are genuine disputes as to material facts. *See, e.g., Gitzen*, 2021 WL 6286382, at *1, *4 (denying plaintiff's motion for summary judgment because defendant had "come forward with issues of material fact as to whether Plaintiff was an exempt employee"); *Pontius v. Delta Fin. Corp.*, 2007 WL 1496692, at *10-11 (W.D. Pa. Mar. 20, 2007) (finding summary judgment should be denied to both parties on administrative exemption "because genuine issues of material fact remain"), *report and recommendation adopted*, 2007 WL 1412034 (W.D. Pa. May 10, 2007).

By way of example, class member Corey Fink disagrees with the way that Plaintiffs have characterized the role of Recruiter and does not believe it accurately reflects the way he performed the job, his expectations for how the job is to be performed, or his observation of how others have performed the job. (ECF No. 203-13 at ¶ 37.) It is undisputed that, Fink worked as a Recruiter for more than one year during the relevant time period (*id*., ¶ 5); specialized in finding candidates skilled in DevOps, Automation, and Cloud Technology to work for global media and technology clients (*id*., ¶ 7); built his knowledge in this area so that he can speak in depth with the people who perform this technical work (*id*., ¶ 8); worked with managers at TEK's customers to create and validate the requirements to be filled (*id*., ¶¶ 12-13); decided what requirements he would work on (*id*., ¶ 15); developed his own strategy for finding people with the right skills for the requirements

he would work on (*id.*, ¶¶ 16, 31); strategized how to start a conversation with the people who he believed might have the right skills for the requirement (*id.*, ¶ 17); built a personal network of candidates (*id.*, ¶ 18); vetted candidates beyond representations made on their resumes and validated whether they possessed the skills they claimed to have and how they had used those skills through interviews (*id.*, ¶¶ 19-20); assessed candidates for soft skills relevant to the requirements (*id.*, ¶ 21); and assessed information obtained from candidates professional references (*id.*, ¶ 24). Fink only proposed candidates who he believed were the best match for the requirements (*id.*, ¶ 26); and he advocated for these candidates to Account Managers and TEK customers (*id.*, ¶¶ 26-27). He was responsible for negotiating the candidates' pay rates and other conditions of employment (*id.*, ¶ 28), then providing feedback to and coaching those who began assignments at a TEK customer (*id.*, ¶¶ 29-30). Multiple other Recruiters in the class described experiences similar to those of Fink (ECF Nos. 203-12, 203-14 through 203-20), as did other current and former Recruiters (ECF Nos. 203-25 through 203-28), and managers familiar with the work of TEK Recruiters (ECF Nos. 203-21 through 203-24). These Recruiters all would be deemed non-exempt, despite that their description of their job duties differs materially from role as described in the Opinion.

The Court should reconsider its Opinion, taking into account that TEK need not carry its ultimate burden to prove that all Recruiters are exempt in order to defeat summary judgment.

**B.    The Opinion Fails To Analyze Important Elements Of The Administrative Exemption Relevant To The Classification of Recruiters.**

Following the fair reading of the exemption required by *Encino* and drawing all reasonable inferences in the light most favorable to TEK, there are genuine disputes of material fact that preclude a summary judgment decision that all TEK Recruiters are non-exempt as a matter of law.

Applying the "narrow construction" standard that the U.S. Supreme Court rejected in

*Encino*, the Opinion focused on Recruiters' duties vis-à-vis the management or general operations of TEK in its assessment of the "directly related" prong of the administrative exemption. The Opinion concluded that TEK is in the business of recruiting and placing job candidates, Recruiters' work involves producing candidates for placement, and thus Recruiters' primary duties consist of "sales production within the context of [TEK's] operation" rather than work directly related to TEK's management or general operations. (Opinion at 10, 15, 17-18, 20.) The Court likened the case and analysis to *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900-07 (3d Cir. 1991), *Gusdonovich v. Bus. Info. Co.*, 705 F. Supp. 262, 264-65 (W.D. Pa. 1985), and *Rood v. R&R Express, Inc.*, 2022 WL 1082481, at \*5-7 (W.D. Pa. Apr. 11, 2022), which were expressly decided under the now-defunct "narrow construction" principle and determined that the Recruiters' primary duties were unrelated to the management or general business operations of TEK.

But this is only one of the ways that an administrative employee may satisfy the "directly related" prong of the exemption; the other is by performing work directly related with the running or servicing of the business of *the employer's customers*. 29 C.F.R. § 541.201 (emphasis added). The record reflects ample evidence that Recruiters' primary duties are directly related to the management or general business operations of TEK's ***customers***. The Opinion considered this part of the prong only briefly (less than a page of nearly 13 pages spent on the directly-related prong). *For TEK's customers,* Recruiters are not "producers" or "salespeople" of any kind. (ECF No. 202 at 19-21.) Rather, from the perspective of a TEK customer, TEK Recruiters perform administrative personnel management and human resources functions, finding, recruiting, qualifying, and managing the consultants who are placed on assignment to work for the customer.

As another example, the Opinion includes this statement:

> TEK states that "Recruiters serve as personnel management and human resources recruiters to staff and manage critical positions for a variety of TEK's customers in

a variety of industries. Said another way, TEK Recruiters do not 'produce' anything for TEK's clients." (ECF No. 202, p. 19). But several of TEK's employees have made it clear that Recruiters are not in a human resource position. For example, Haycock confirmed that "Recruiters do not fall under the Human Resources Department" nor do Recruiters "make determinations internally at TEK regarding human resources." (ECF No. 190-3, pp. 27, 36) [citing Plaintiffs' Appendix to Motion for Summary Judgment].

(Opinion at 18-19.)

TEK respectfully submits that the Court erred in reaching this conclusion. The Court favored Plaintiffs' evidence that Recruiters are not employed to provide HR functions *to other TEK employees*. But this point is irrelevant to TEK's argument, which is that Recruiters are functionally providing personnel management and HR services to TEK's *customers*. (ECF No. 203-1 (collecting statements from Recruiters, including class members Fink, Mosquera, Edds, Bohen, Warren, Rick, Payonk, and Marshall).) To put it another way, TEK's customers have decided that for some positions, they do not want to directly employ recruiters to find talent to fill open roles and make hiring recommendations, or HR personnel to manage them in that role. Instead, TEK's customers have effectively outsourced those duties to Recruiters employed by TEK. The parties' dispute over this point is a genuine issues of material fact to be presented to a jury for a resolution. *Figueroa*, 208 F.3d at 439.

With respect to the exemption component regarding the exercise of discretion and independent judgment, the Opinion echoed the FLSA regulation that Plaintiffs cite in arguing that Recruiters' job duties are similar to "personnel clerks." (*Id*. at 25.) That regulation provides in part that "personnel clerks who 'screen' applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not meet the duties requirements for the administrative exemption." 29 C.F.R. § 541.203(e). But the Opinion omitted the portion of the guidance that when the personnel performing screening functions "make[] the hiring decision or *recommendations for hiring* from the pool of qualified applicants, such duties constitute exempt

7

work." *Id*. (emphasis added). As the Court acknowledged, Recruiters recommend which consultants should be hired. (Opinion at 25.) The Court made little of this, however, and concluded that Recruiters do not exercise discretion and independent judgment with respect to matters of significance because account managers "must sign-off on Recruiter recommendations." (*Id*. at 24-25.) This overlooks the plain fact that Recruiters do the exempt work of making recommendations for hiring in the first place. (ECF No. 201 at 110 ¶ 121.) It also ignores that some Recruiters submit candidates directly to customers. (ECF No. 201 at 41, 76, 110.) These are genuine disputes of material fact to be resolved at trial.

> **C.    The Opinion Weighed The Evidence, Rather Than Construing Facts In The Light Most Favorable To The Non-Movant, TEK.**

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining the existence of a disputed issue of material fact on a motion for summary judgment, all inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983) (holding "that there [were] genuine issues of material fact to be resolved before a proper determination of the [ ] claim [could] be made" and that "district court's grant of summary judgment regrettably shortcircuited the pursuit of such facts"), *cert. dismissed*, 465 U.S. 1091 (1984). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Burton v. Teleflex Inc.*, 707 F.3d 417, 428 (3d Cir. 2013) ("By crediting the testimony of the Teleflex employees and disregarding the Burtons' conflicting testimony, the District Court improperly made credibility determinations, which it may not do at summary judgment."). The Court's task is to determine whether there exists no genuine issue of

8

material fact that would permit a reasonable jury to find for the nonmoving party. *Figueroa v. Blackburn*, 208 F.3d 435, 439 (3d Cir. 2000). Here, the Opinion at times went beyond the summary judgement standard and "weigh[ed] the evidence and determine[d] the truth of the matter."

As one example, the Opinion includes this statement:

According to TEK, the evidence demonstrates that Recruiters' duties include defining the requirements for TEK's customers; however, TEK fails to provide evidence that supports that assertion. John Bury's ('Bury') testimony, offered to strengthen its claim, does not support that contention when viewed as a whole.

(Opinion at 26.) TEK offered testimony by other Recruiters who testified that defining requirements directly with TEK's customers is a regular part of their work. (ECF No. 203-3 (collecting statements from Recruiters, including class members Fink, Mosquera, Bohen, Edds, and Marshall, as well as others who work directly with Recruiters in such settings).) The Opinion narrowly parses the statements by a single Recruiter while giving no weight to numerous other statements by those working as or with Recruiters. Whether all Recruiters engage in such activity is a matter of genuine dispute.

For further example, the Opinion notes that "TEK provides the job description for Recruiters to support its position that Recruiters are administrative," then highlights some of the listed duties, "includ[ing] tasks like 'negotiate,' 'manage,' and 'develop recruiting strategies.'" (Opinion at 21-22.) The Opinion then concludes that Recruiters do not do these things, despite ample evidence that many Recruiters perform such tasks. To illustrate this further:

- The Opinion concludes that Recruiters do not "negotiate" by citing to an interrogatory response related to the negotiation of contracts between TEK and its customers. (Id., citing ECF 1902-2, p. 4.) But that is not the type of negotiation described in the job description, which says Recruiters "Negotiate unique compensation packages (e.g., wages, benefits) to attract and place candidates." (ECF No. 203-40, and similar language at ECF Nos. 203-41 and -42.) The record evidence shows that many Recruiters engage in such negotiation with every single consultant they place, and that these negotiations affect the margin or net profit that TEK receives from work performed by a consultant, impacting TEK's bottom line. (ECF No. 203-2 (collecting testimony by Recruiters, including class members Mosquera, Fink, Edds, Chong, Bohen, Rice, Marshall, Warren,

9

and Payonk); full declarations at ECF Nos. 203-12 to 203-20); ECF No. 201 at 79.)

- The Opinion concludes that Recruiters do not "manage" by citing deposition testimony that Recruiters "do not create management policies for TEK." (Opinion at 22, citing ECF No. 190-3.) But *creating* management policies is different than *managing* others, which is what the job description explains that Recruiters do. (ECF No. 203-40 through -42 ("Communicate new assignments and manage consultants while on assignment.").) Record evidence shows that many Recruiters manage the consultants that they place on assignment to TEK's customers, including by documenting and delivering constructive performance feedback, coaching how to navigate workplace issues, and building relationships. (ECF No. 203-5 (collecting statements by Recruiters, including class members Edds, Mosquera, Fink, Chong, Bohen, Warren, Rice, Marshall, and Payonk).)

- The Opinion concludes that Recruiters do not "develop recruiting strategies that TEK implemented." (Opinion at 22, citing ECF No. 190-3, pp. 36-37 and ECF No. 190-4, p. 31.) This again misconstrues the job description, however, which explains that Recruiters "Develop recruiting strategies to identify qualified candidates by using specialized networking tools." (ECF Nos. 203-40 through -42.) Each Recruiter develops a personal recruiting strategy, not for TEK broadly. Record evidence shows that many Recruiters do exactly that. (ECF No. 203-10 (collecting statements by Recruiters, including class members Edds, Bohen, Payonk, Chong, Rice, Warren, Fink, and Marshall).)

The Opinion treats negotiation, management, and creating sourcing strategy as key to assessing whether the Recruiter role satisfies the administrative exemption. The record evidence shows that many Recruiters in the class do each of these things, thus creating additional disputed issues of material facts that must be resolved by a jury.

## III.    CONCLUSION

Based on the foregoing, TEKsystems, Inc. respectfully requests that the Court grant its Motion for Reconsideration, vacate the portions of the Opinion and Orders granting Plaintiffs' Motion for Partial Summary Judgment, and enter a new order denying Plaintiffs' Motion.

DATED: March 11, 2026                    Respectfully submitted,

By: */s/ Andrew Scroggins*

    Andrew L. Scroggins (ascroggins@seyfarth.com)
    Noah A. Finkel (nfinkel@seyfarth.com)
    SEYFARTH SHAW LLP
    233 South Wacker Drive, Suite 8000
    Chicago, Illinois 60606-6448
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000
    *Attorneys for Defendant TEKsystems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Andrew Scroggins*
Andrew L. Scroggins