**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

MICHAEL THOMAS, MARIA CONYERS-JORDAN, AUSTIN SHERMAN, LYNDA ALEXANDRA MAHER, AVA DORÉ, RACHEL RICHENBERG, and EMILY BURKE, on behalf of themselves and others similarly situated,

     *Plaintiffs*,

v.

TEKSYSTEMS, INC.,

     *Defendant*.

Civil Action No. 2:21-cv-00460-WSS

Class and Collective Action

(Document Filed Electronically)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION
OF THE COURT'S FEBRUARY 11, 2026 OPINION AND ORDERS**

1

## I.    INTRODUCTION

This Court issued a thorough Opinion granting Plaintiffs' motion for partial summary judgment and holding that TEK's administrative-exemption affirmative defense fails as a matter of law. *Thomas v. TEKsystems, Inc.*, No. 21 Civ. 460, 2026 WL 381239 (W.D. Pa. Feb. 11, 2026). TEK now asks the Court to undo that ruling. It identifies no new evidence, change in law, or clear error. Instead, TEK points to the same factual record and makes the identical legal arguments the Court already considered and rejected. That is not the purpose of a motion for reconsideration.

TEK advances three arguments. First, it contends the Opinion applied an improper "narrow construction" standard that *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018), has since displaced. Second, it claims the Court misapplied the summary judgment burden of proof. Third, it argues the Court overlooked or misapplied key evidence and authority. None of these arguments identifies a clear error of law or even good cause that would warrant reconsideration. The *Encino* argument targets a citation that played no material role in the Court's analysis; the burden argument misconstrues what happened; and the evidentiary arguments merely reargue disputes the Court already resolved after carefully reviewing the full record. The motion should be denied.

## II.    LEGAL STANDARD

Motions for reconsideration are "sparingly granted" and not a vehicle to relitigate issues already decided. *LifeMD, Inc. v. Lamarco*, No. 21 Civ. 1273, 2022 WL 23046093, at *1 (W.D. Pa. July 25, 2022) (Stickman, J.); *Butela v. Midland Credit Mgmt. Inc.*, No. 20 Civ. 1612, 2023 WL 11980246, at *1 (W.D. Pa. Sept. 6, 2023) (Stickman, J.) ("courts should only grant motions for reconsideration in extraordinary circumstances.") (cleaned up). Courts tend to grant motions for reconsideration "only upon the grounds traditionally available under Fed. R. Civ. P. 59(e)." *Foster v. Westchester Fire Ins. Co.*, No. 09 Civ. 1459, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26,

2012). Reconsideration is generally appropriate where there is: (1) an intervening change in law; (2) new evidence; or (3) clear error or manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### III.    ARGUMENT

#### A.    The Court Applied the Correct Legal Standard.

TEK's argument—that the court applied the wrong legal standard by narrowly construing the Fair Labor Standards Act ("FLSA") administrative exemption—ignores the actual analysis performed by the Court. TEK points to no example of how the Court narrowly interpreted the exemption rather than engaged in a fair reading of it.

TEK's argument rests on a single, non-dispositive citation to *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 694 (3d Cir. 1994). But the Court's analysis did not turn on any "narrow construction" principle, and a passing reference to such language, without reliance on it, is not reversible error. *See Cruz-Hernandez v. Att'y Gen. United States of Am.*, 659 F. App'x 719, 722 (3d Cir. 2016) (acknowledging that "the BIA thus misstated the standard of review" but concluded "there was no reversible error" because "the BIA actually based its decision on a factual finding" and "did not erroneously apply a clear error standard to any legal questions."). The Court's actual analysis of the administrative exemption—spanning more than 30 pages—applied a fair reading, and not a narrow construction. *See Hurt v. Com. Energy, Inc.*, No. 12 Civ. 758, 2018 WL 4203531, at *1 (N.D. Ohio Sept. 4, 2018) (recognizing in FLSA action that, "[a]lthough the Court gave passing mention of a narrow exemption construction in its order denying summary judgment, it did so in a way immaterial to its conclusion" and denying motion for reconsideration.).[1]

---

[1]    *See also Wilkins v. Just Energy Grp. Inc.*, No. 13 Civ. 5806, 2019 WL 1317756, at *3 (N.D. Ill. Mar. 22, 2019) (same); *Mobley v. Shoe Show, Inc.*, No. 17 Civ. 024, 2018 WL 4871130, at *2 (S.D. Ga. Oct. 9, 2018) (same).

The Court found that Recruiters' primary duty was not "directly related to the management or general business operations of the employer or the employer's customers" ("management prong") nor that their primary duty includes "the exercise of discretion and independent judgment with respect to matters of significance" ("discretion prong"). *See* 29 C.F.R. § 541.200. In examining the management prong, the Court applied the "administrative/production dichotomy," which is not a "narrowing" of the FLSA; it is built into the regulations. *Thomas*, 2026 WL 381239, at *5-*10. The Court similarly applied the undisputed facts to the discretion prong in a lengthy analysis. *Id.* at *10-*14. The Court's analysis of this regulatory framework was substantively correct under both a fair reading or narrow construction.

The cases the Court relied on—*Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d Cir. 1991); *Rood v. R&R Express, Inc.*, No. 17 Civ. 1223, 2022 WL 1082481 (W.D. Pa. Apr. 11, 2022); and *In re Enterprise Rent-a-Car Wage & Hour Emp. Pracs. Litig.*, No. 07 Civ. 1687, 2012 WL 4356762 (W.D. Pa. Sept. 24, 2012)—applied the regulatory framework, not a judicial thumb on the scale. TEK does not explain how applying a "fair" rather than a purportedly "narrow" reading of the same regulations would change the outcome. It offered only the conclusory claim that the standard "pervades" the Opinion. That is insufficient for reconsideration. *See Etkins v. Glenn*, No. 10 Civ. 216, 2012 WL 1564621, at *1 (W.D. Pa. May 3, 2012). Finally, further supporting the Court's finding, the *Avery v. TEKsystems, Inc.*, court reached the same conclusion under California law relying on substantially the same record. No. 22 Civ. 02733, 2024 WL 4281442 (N.D. Cal. Sept. 23, 2024); *Thomas*, 2026 WL 381239, at *11, n.21.

**B.      The Court Correctly Applied the Summary Judgment Burden of Proof.**

TEK misrepresents the burden of proof that the Court applied in its decision. TEK quotes the Court's correct observation that the administrative exemption is an affirmative defense for

which TEK bears the burden of proof. *Thomas*, 2026 WL 381239, at *4. The Court identified and *applied* the correct standard at summary judgment. *Id.* ("Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof.") (quoting *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 456 (W.D. Pa. 2015) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)), & n.9 (same) (quoting *Gillott v. Powerex, Inc.*, 904 F. Supp. 442, 445 (W.D. Pa. 1995)).

Plaintiffs made that showing. The burden then shifted to TEK to "designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial." *Id.* (cleaned up). The Court found TEK failed to meet that burden. The Court specifically noted that "many of the discretionary duties TEK purports Recruiters perform are unsupported by evidence in the record." *Id.* at *12. That is not a misallocation of the burden; it is a correct application of it.

TEK's reliance on the Fink declaration does not create a genuine dispute. That was already before the Court when it ruled. The Court explicitly acknowledged TEK's evidence that "Recruiters are afforded the ability to use discretion, but not over matters of significance." *Id.* at *13.[2] The Court reviewed TEK's declarations "in their entirety" and found that TEK's summary

---

[2]    The Fink declaration supports the Court's findings that: **(1)** "Recruiters do not have a final say over the candidates AMs submit to the clients, or those ultimately hired by clients." *Thomas*, 2026 WL 381239, at *13 (W.D. Pa. Feb. 11, 2026); ECF No. 203-13 (Fink Dec.) at ¶ 26 ("AMs *usually* took my recommendations about which candidates *to present to our clients*") (emphasis added); **(2)** Recruiters do not define TEK's customers' hiring needs; *Thomas*, 2026 WL 381239, at *12; ECF No. 203-13 (Fink Dec.) ¶ 12 (describing "meeting with a client *to learn* about the requirements[]") (emphasis added); **(3)** "Recruiters' job requires that they abide by TEK's expectations so they can successfully match candidates with TEK's clients." *Thomas*, 2026 WL 381239, at *10; ECF No. 203-13 (Fink Dec.) ¶ 26 (presents candidates to AMs who "match" customer reqs.), ¶¶ 31, 34, 36 (describing performance metrics); **(4)** Recruiters are not engaged in "personnel management" or "human resources," *Thomas*, 2026 WL 381239, at *9; ECF No. 203-

excerpt documents "leave out important information as to the Recruiters' experiences." *Id.* That it is exactly the kind of holistic evaluation of the record that summary judgment requires. *See Smith v. Bank N.Y. Mellon Corp.*, No. 10 Civ. 678, 2011 WL 836858, at *15 (W.D. Pa. Jan. 20, 2011).

None of TEK's declarations change the undisputed facts: AMs vetoed or approved the submission of job candidates to clients; clients made final hiring decisions; no Recruiter could bind TEK or its customers to any contract; and no Recruiter formulated, interpreted, or implemented management policies. Sourcing strategizing does not raise a genuine dispute about whether Recruiters exercised discretion over matters of significance. The Court correctly so found.

### C.    The Court Did Not Overlook TEK's Customer-Side Argument.

TEK's own brief concedes that the Court addressed whether Recruiters' duties were directly related to the management or general business operations of TEK's customers. ECF No. 220 at 6. The Court correctly applied the administrative/production dichotomy under settled Third Circuit law. *Thomas*, 2026 WL 381239, at *7-*10. The Court noted that to qualify as exempt, work must affect "business operations to a 'substantial degree'[.]" *Thomas*, No. 2026 WL 381239, at *7 (cleaned up). The Court recognized that "acting as a consultant to customers" with the goal of making a sale to the customer does not qualify as exempt work. *Id.* at *8 (citing *Rood*, 2022 WL 1082481, at *1, *6). Further, the Court found Recruiters' primary job was sourcing and contacting potential job candidates to match job reqs, *Thomas*, 2026 WL 381239, at *2-*3, *8, *14, and *not* communicating with TEK's clients. *Id.* at *8. The Court found that AMs, not Recruiters, "primarily engag[] with TEK's clients." *Thomas*, 2026 WL 381239, at *8 (citing ECF No. 190-5 (Doyle Tr.));

---

13 (Fink Dec.) ¶ 29 ("The specific feedback usually came from the client manager who the consultant worked for."); and (**5**) Recruiters did not engage in negotiations that qualify as administrative duties, *Thomas*, 2026 WL 381239, at *10 & n.19; ECF No. 203-13 (Fink Dec.) ¶ 28 ("If I was working on a req *with a pay range* that was lower than the candidate was looking for, . . ." and admitting it was the AM who negotiated pay with TEK's customers) (emphasis added).

*12. TEK admitted this. ECF No. 207 at 82-84, ¶ 35 (TEK admits that AMs "generally communicate with client's regarding the client's hiring needs and that recruiters generally obtain client information from an Account Manager."). Clients, and not Recruiters, make decisions about their hiring needs. *Thomas*, 2026 WL 381239, at *3. The Court found no evidence that TEK's customers relied on Recruiters for *any* policy decisions. *Id.* "Recruiters do not have the authority to bind TEK's clients in any way." *Avery*, 2024 WL 4281442, at *7.

The Court rejected TEK's argument that Recruiters play a human resources or personnel management role in a manner that rises to the administrative exemption. *Thomas*, 2026 WL 381239, at *9.[3] The Court relied on corporate testimony and TEK's declarants to find that Recruiters do not: (1) make "ultimate hiring decisions for clients," *id.* at *3; (2) create or implement management or operational policies for TEK's clients, *id.*; and (3) supervise or "'oversee[] the actual work getting done' by consultants." *Id.* *8. TEK's motion ignores that "middlemen, merely delivering the messages" do not qualify for the administrative exemption. *Tooker v. BlueJay Sols., Inc.*, 715 F. Supp. 3d 1022, 1031 (W.D. Mich. 2024).[4] The Court also noted that TEK makes clear

---

[3]    The only evidence that TEK points to in its Motion for Reconsideration is a summary document of out-of-context quotes that assert that the declarants believe their work to be "important" to TEK's customers. ECF No. 203-1. The Court already identified these summary exhibits as lacking full context. *Thomas*, 2026 WL 381239, at *13. Further, the underlying declarations merely assert that Recruiters match candidates to job reqs. (which are created by the customers), occasionally attend meetings with TEK's customers generally to learn, and occasionally relay feedback from consultants' actual managers to the consultant. ECF No. 203-13 (Fink Dec.) ¶¶ 11-12, 26, 29 ("feedback usually came from the client manager who the consultant worked for."); ECF No. 203-12 (Mosquera Dec.) ¶¶ 8, 14-16, 21; ECF No. 203-14 (Edds Dec.) ¶¶ 8, 12, 28; ECF No. 203-16 (Bohen Dec.) ¶¶ 21, 24, 33; ECF No. 203-18 (Warren Dec.) ¶¶ 18, 22; ECF No. 203-15 (Rice Dec.) ¶¶ 8, 12, 14, 19; ECF No. 203-19 (Payonk Dec.) ¶¶ 21, 23; ECF No. 203-20 (Marshall Dec.) ¶¶ 9, 15-20. Further, 12 of TEK's 27 declarations are from Recruiter Leads whose declarations use the present tense and thus appear to describe their current Recruiter Lead or Specialization Lead job duties. *See, e.g.,* ECF No. 203-12 (Mosquera Dec.) ¶¶ 10-21; ECF No. 203-19 (Payonk Dec.) ¶ 13; ECF No. 203-14 (Edds Dec.) ¶¶ 6, 12-13, 17, 21, 24, 26.

[4]    TEK does not even point to any evidence that communicating with placed consultants is Recruiters' primary duty.

that "If someone is interested in HR make sure you explain to them the difference between recruiting and Human Resources, they are not the same thing in regard to TEK. We consider our recruiter role inside sales and our account manager role outside sales." *Thomas*, 2026 WL 381239, at *9 (quoting ECF No. 190-102). Further, the Court relied on TEK's own evidence to find that Recruiters aid in "producing" potential job candidates to TEK's customers and do not serve as personnel management or HR employees. *Id.*[5] Reconsideration is not a vehicle to reargue points already considered and rejected. *See Etkins*, 2012 WL 1564621, at *1.

**D.     The Personnel Clerk Regulation Carve-Out Does Not Rescue TEK's Discretion Argument.**

Like the *Avery* court, this Court already found that Recruiters were not the individuals making *hiring decisions* or making recommendations "*from the pool of qualified applicants*." 29 C.F.R. § 541.203(e) (emphasis added). The personnel clerk regulation's carve-out contemplates a true decision-maker or final recommender—the personnel officer who actually selects *from* the qualified pool. Here, the Court correctly found that Recruiters "source" the applicant pool from which AMs and the clients make hiring recommendations and decisions. *Thomas*, 2026 WL 381239, at *3, *13 ("Recruiters do not have a final say over the candidates AMs *submit* to the clients, or those ultimately *hired* by clients.") (emphasis added). They are not the "exempt human resources manager" the regulation envisions; they are the "personnel clerks" who screen against minimum qualifications. *Avery*, 2024 WL 4281442, at *10, n. 5 ("there is not evidence[] that Recruiters ever present candidates to clients without the presence and leadership of their Account Managers."); *see also Thomas*, 2026 WL 381239, at *11 (Recruiters' "spend most of their time" screening and matching job candidates to pre-determined job reqs.). The evidence TEK claims the

---

[5]     The Court also notes that TEK repeatedly refers to Recruiters as "producers." *Id.*

Court overlooked supports this finding. ECF No. 220 at 8 (citing declarations that describe submitting candidates who matched job reqs. to AMs). The instances when TEK's declarants report reaching out to TEK's clients directly with a job candidate are infrequent and occur in situations such as when "the Account Manager is away." ECF No. 207 at 238-239 at ¶ 133.[6]

Crucially, TEK raised all these arguments and pointed to the *same* evidence in its opposition to Plaintiffs' motion; the Court reviewed it and found it insufficient. Reconsideration is not an opportunity to re-present the same record hoping for a different result.

### E.    TEK's Evidentiary Arguments Do Not Support Reconsideration.

The Court evaluated the record as a whole without making credibility determinations. The Court rejected TEK's attempt to obfuscate the record by relying on summary exhibits that are not permissible under the Federal Rule of Evidence 1006. *See* ECF No. 207 at 3-4; *Thomas*, 2026 WL 381239, at *12 (The Court "viewed as a whole" TEK's evidence).

TEK's specific arguments also misread the Opinion.  For example, TEK faults the Court for concluding that Recruiters do not "negotiate," citing an interrogatory response about contracts between TEK and its customers—while arguing the job description's reference to negotiation concerns candidate compensation packages. But, analogizing this case to *Martin*, 940 F.2d at 905 and *Gusdonovich v. Bus. Info. Co.*, 705 F. Supp. 262, 265 (W.D. Pa. 1985), the Court found that

---

[6]    It is AMs' *primary duty*, and not Recruiters', to manage relationships with its clients and TEK admitted such in its summary judgment briefing in *Avery*. ECF No. 207 at 234, ¶ 125; ECF No. 208-1 (*Avery* Def.'s Br.) at 5 ("AM [is] focused on the customer relationship"). None of the declarants to whom TEK cites claim they submitted candidates to TEK clients outside the mandates and leadership of AMs. *See* ECF No. 203-13 (Fink Dec.) ¶ 26 ("When I believed that I had found the best match for a req, I would tell the AM"); ECF No. 203-12 (Mosquera Dec.) ¶ 17 ("I run [candidate packages] by the Account Manager first"); ECF No. 203-16 (Bohen Dec.) ¶ 21 ("it was my decision which candidate to present to an AM"); ECF No. 203-14 (Edds Dec.) ¶ 24 ("Account Managers almost always submit candidates I proposed to the client."); ECF No. 203-20 (Marshall Dec.) ¶ 18 ("I would advocate for my candidate with the AM").

whatever negotiation TEK argued Recruiters engaged were inside sales tasks and not administratively exempt tasks, and was not the Recruiters' primary duty. *Thomas*, 2026 WL 381239, at *7-*8, *10, n.19. The Court noted that negotiations "to make a particular sale," do not rise to the level of administrative duties. *Id.* at *7-*8 (quoting *Martin*, 940 F.2d at 905) (it was AM's primary duty and not Recruiters', to negotiate pay rates with TEK's customers); *Avery*, 2024 WL 4281442, at *5 (Recruiters cannot negotiate outside of the ranges set by TEK's clients).

Similarly, the Court's analysis of "managing" consultants distinguished between the production activity of maintaining contact during an assignment (to keep candidates engaged in TEK's services for future placements because TEK considers consultants a customer base) and managerial authority over consultants' work. *See Thomas*, 2026 WL 381239, at *8.[7] Finally, the Court noted that the undisputed evidence demonstrated that Recruiters' "discretionary duties do not fall within the list of duties that the Regulation deems 'matters of significance.'" *Thomas*, 2026 WL 381239, at *13. The declarations to which TEK cites support the Court's finding that Recruiters had some discretion over how they sourced candidates, but that discretion did not rise to the level of significance necessary to qualify for the administrative exemption.

## IV.     CONCLUSION

Because TEK's motion amounts to nothing more than disagreement with the Court's well-reasoned Opinion, it should be denied.

---

[7]     TEK's motion ignores the standard for the management prong. It does not argue Recruiters' primary job duty is related to "running" the business in "a meaningful way" and not "merely the carrying out of its day-to-day affairs." *In re Enter. Rent-a-Car Wage & Hour Emp. Pracs. Litig.*, 2012 WL 4356762, at *18. "Running the business" consists of the duties, such as: "[D]esign[ing] or plan the systems, [or] [] analyze how they work or how they can be improved," *Walsh v. Unitil Serv. Corp.*, 64 F.4th 1, 8 (1st Cir. 2023); *Martin*, 940 F.2d at 902; *Su v. F.W. Webb Co.*, 110 F.4th 391, 399 (1st Cir. 2024); and having "policymaking authority." *Su*, 110 F.4th at 398.

Dated: March 26, 2026

Respectfully submitted,

*/s/* Sally J. Abrahamson

Sally J. Abrahamson* (DC 999058)
sabrahamson@flsalaw.com
**Werman Salas P.C.**
609 H Street NE, 4th Floor
Washington, D.C. 20002
Phone No.: (202) 830-2016
Fax No.: (312) 419-1025

Douglas M. Werman * (IL 6204740)
dwerman@flsalaw.com
Maureen A. Salas* (IL 6289000)
msalas@flsalaw.com
Anne Kramer* (MA 697435)
akramer@flsalaw.com
**Werman Salas P.C.**
77 West Washington Street, Ste 1402
Chicago, Illinois 60602
Phone No.: (312) 419-1008
Fax No.: (312) 419-1025

Sarah R. Schalman-Bergen (PA 206211)
ssb@llrlaw.com
Krysten Connon* (PA 314190)
kconnon@llrlaw.com
Olena Savytska* (MA 693324)
osavytska@llrlaw.com
**Lichten & Liss-Riordan, P.C.**
729 Boylston Street, Suite 2000,
Boston, MA 02116
Phone No.: (617) 994-5800
Fax No.: (617) 994-5801

*Attorneys for Plaintiffs, the FLSA Collective, and Rule 23 Classes*

*\*Pro hac vice*

11

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served via CM/ECF filing system on March 26, 2026 to all counsel of record.

/s/ Sally J. Abrahamson
One of the Attorneys for Plaintiffs
